STATE OF WEST VIRGINIA

*v.*

J. H. ARBOGAST

(CC 760)

Submitted February 1, 1950. Decided February 21, 1950.

*William C. Marland,* Attorney General, *Thomas J. Gillooly,* Assistant Attorney General, *George M. Kittle,* Prosecuting Attorney of Barbour County, for plaintiff.

*Wm. T. George, Sr., Wm. T. George, Jr.,* for defendant.

GIVEN, JUDGE:

At the May, 1949, term of the Circuit Court of Barbour County the grand jury returned an indictment against the defendant Herbert Arbogast charging larceny of a dog "aged seven months, of the value of one hundred dollars ($100.00) of the goods and chattels of one Woodrow Flint." The defendant filed a demurrer and motion to quash the indictment. The trial court overruled the demurrer and motion to quash and, upon joint application of the parties, certified to this Court the following questions:

> "1. Are the allegations in the indictment which charges the age of the dog alleged to have been stolen to be seven months, and of the value of $100.00, sufficient in law to make said indictment valid?

> "2. Is it necessary under the law to make a dog personal property, such as will be subject to the crime of larceny for an indictment, that the dog must be at least eight months old and the owner thereof having had him assessed as personal property?

> "3. Is it necessary, in an indictment charging the larceny of a dog, to aver in said indictment that the dog was at least eight months of age and had been declared as personal property by the owner by having said dog assessed as personal property?"

The common law rule was that a dog could not be the subject of larceny. *State* v. *Blake*, 95 W. Va. 467, 121 S. E. 488; *Anderson* v. *Commonwealth*, 182 Va. 560, 29 S. E. 2d 838. The State concedes this to be the common law rule. The reasons given for the rule are many and varied, none of which seem logical or sound at this time. It was said that the dog was base and of no intrinsic value, yet its owner could maintain suit for its possession or one could be guilty of larceny of its hide. The usefulness of the dog now makes it one of the most valuable animals to man. Few if any would say that dogs are of no intrinsic value or that they should be outlawed. In *State* v. *Langford*, 55 S. C. 322, 33 S. E. 370, we find the following statement:

"* * * When we are told that the Greeks and Romans employed dogs in war, armed with spiked collars, and that Corinth was saved by war dogs, which attacked and checked the enemy until the sleeping garrison were aroused, we better understand Shakespeare's Antony when he said, 'Cry havoc, and let slip the dogs of war.' We should not let contempt for sheep-killing dogs and our dread of hydrophobia do injustice to the noble Newfoundland, that braves the water to rescue the drowning child; to the Esquimaux dog, the burden-bearer of the Artic regions; to the sheep dog, that guards the shepherd's flocks, and makes sheep raising possible in some countries; to the St. Bernard dog, trained to rescue travelers lost or buried in the snows of the Alps; to the swift and docile greyhound; to the package-carrying spaniel; to the sagacious setters and pointers through whose eager aid tables are supplied with the game of the season; to the fleet fox hound, whose music, when opening on the fleeing fox, is sweet to many ears; to the faithful watch dog, whose honest bark, as Byron says, bays 'deep-mouthed welcome as we draw near home'; to the rat-exterminating terrier; to the wakeful fice, which the burglar dreads more than he does the sleeping master; to even the pug, whose very ugliness inspires the adoration of the mistress; to the brag possum dog and coon dog, for which the owner will fight if imposed upon; and, lastly, to the pet dog and playmate of the American boy, to say nothing of the 'yaller dog', that defies legislatures. Of all animals, the dog is most domestic. Its intelligence, docility, and devotion make it the servant, the companion, and the faithful friend of man. The raising and training of dogs is now pursued by many as a business, large sums of money are invested in them, and they are bought and sold as other property."

Much could be added to the foregoing to show the usefulness, value and loyalty of this animal to man, but this would not answer the questions posed.

The State contends that since the reasons for the common law rule no longer exist this Court is at liberty to

change the rule. This the Court cannot do. Section 21 of Article VIII of our State Constitution provides:

"Such parts of the common law, and of the laws of this State as are in force when this articles goes into operation, and are not repugnant thereto, shall be and continue the law of the State until altered or repealed by the Legislature. * * *."

Code, 2-1-1, provides:

"The common law of England, so far as it is not repugnant to the principles of the Constitution of this State, shall continue in force within the same, except in those respects wherein it was altered by the general assembly of Virginia before the twentieth day of June, eighteen hundred and sixty-three, or has been, or shall be, altered by the legislature of this State."

These provisions make it clear that only the Legislature has the power to change this common law rule.

The State further contends that Code, 11-5-1 and 11-5-3, dealing with the assessment of personal property, and Code, 61-3-13 and 61-3-30, relating to crimes in connection with "goods and chattels" and real and personal property, have supplanted the common law. A careful reading of these statutes, mindful of the principles of statutory construction applicable to cases of this character, reveals that they do not either by express terms or necessary implication purport to change the common law relating to larceny of dogs, nor make dogs personal property. The opinion in *Shifflette* v. *Lilly*, 130 W. Va. 297, 303, 43 S. E. 2d 289, states: "The statute in question, being in derogation of the common law, must be strictly construed, and should not be enlarged in its operation by a construction beyond what its terms express." See also *Holt* v. *Otis Elevator Company*, 78 W. Va. 785, 90 S. E. 333; *Emery* v. *Monongahela West Penn Public Service Company*, 111 W. Va. 699, 163 S. E. 620.

Chapter 83 of the Acts of the Legislature of 1925, Section 1, now Code, 19-20-1, enacted subsequent to the deci-

sion of *State* v. *Blake, supra,* specifically provided that a dog above the age of eight months "shall be subject to taxation and shall be and is hereby declared to be personal property within the meaning and contemplation of the laws of West Virginia." Section 2 of that act makes it the duty of the assessor of each county to collect a head tax on each dog within his jurisdiction, and further provides that the owner of any dog above the age of eight months shall be permitted to place a value upon such dog and have such dog assessed as other "personal property." The head tax required to be so assessed is not a property tax and does not indicate that the Legislature intended to change the common law as to all dogs. The opposite intention is quite clear from the fact that only dogs above the age of eight months were "declared" personal property, and from the fact that only owners of dogs over eight months of age could have them assessed as personal property. Therefore the common law as applied to dogs under eight months of age continues to be the law of this State.

The first question certified is answered in the negative. Answers to the other questions certified are not necessary to the disposition of this case.

*Reversed and remanded.*