STATE OF WEST VIRGINIA

*v.*

THOMAS VOIERS

(No. 10236)

Submitted Sept. 6, 1950. Decided Oct. 3, 1950.

*James E. Maroney, Breckenridge & Brown, John B. Breckinridge,* and *B. P. Brown,* for plaintiff in error.

*William C. Marland,* Attorney General, *Thomas J. Gillooly,* Assistant Attorney General, for defendant in error.

Fox, Judge:

At the August Term, 1949, of the Circuit Court of Nicholas County, the grand jury of said county attending on said court returned an indictment for grand larceny against one Thomas Voiers, charging him with the theft of one female collie dog, above the age of eight months, of the value of $100.00, and further charging that the said dog had been assessed for taxation by the assessor of said county prior to the finding of the indictment. A demurrer to the indictment was overruled, whereupon a plea of not guilty was entered by the defendant and trial before a jury had, resulting in a verdict finding the defendant guilty of petit larceny as charged in the indictment. A motion to set aside said verdict was overruled, and the judgment of the court was that defendant serve a term of ninety days in the county jail of Nicholas County and pay the costs of the prosecution. On December 5, 1949, we granted this writ of error to the judgment aforesaid.

There is no statutory definition of the offense of larceny. It is a common law offense and various attempts have been made to define same. One definition is that "Larceny, at common law, is the taking and carrying away, by trespass, of personal property which the trespasser knows to belong either generally or specially to another, with intent to deprive such owner permanently of his property therein." Clark's Criminal Law 241. Other definitions are: "The felonious taking and carrying away of the personal goods of another. 4 Bl. Comm. 229. The unlawful taking and carrying away of things personal, with intent to deprive the right owner of the same. 4 Stephen Comm. 152. The felonious taking the property of another, without his consent and against his will, with intent to convert it to the use of the taker. Hammon's Case, 2 Leach 1089." Black's

Law Dictionary (3rd Ed.) 1070. All of these definitions assume that the thing taken must be personal property in one form or another.

It is conceded that at common law a dog could not be the subject of larceny, and this Court has so held. *State* v. *Blake*, 95 W. Va. 467, 121 S. E. 488; *State* v. *Arbogast*, 133 W. Va. 672, 57 S. E. (2d) 715. However, by Code, 19-20-1, it is provided:

> "Any dog above the age of eight months shall be subject to taxation and shall be and is hereby declared to be personal property within the meaning and construction of the laws of West Virginia."

It is upon this provision of the statute, and upon the general common law rule covering larceny that the State seeks to maintain the conviction, judgment and sentence aforesaid. The sentence of imprisonment imposed is authorized by Code, 61-3-13.

In our opinion, four material questions are presented: (1) Was Code, 19-20-1 and 2, legally enacted by Chapter 83, Acts of the Legislature, 1925, which Act, with certain immaterial amendments as to form, was incorporated in the Code of 1931; (2) whether under said statute, now incorporated in the Code, a dog above the age of eight months can be the subject of larceny, irrespective of the payment of taxes in any form; (3) was error committed by the trial court as regards the admission of evidence and the giving of instructions during the trial; and (4) was the evidence sufficient to sustain the conviction under attack? These several questions will be considered in the order stated.

As to the first question, it is contended that Chapter 83, Acts of the Legislature, 1925, is not and has never been law because the title thereof was imperfect, in that it included more than one object, and therefore invalid under the provisions of Section 30, Article VI of the Constitution of this State which provides that:

"No act hereafter passed shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revised, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. * * *"

The title to Chapter 83, aforesaid, reads as follows:

"An act for the protection of sheep, lambs, goats, kids and other property and providing compensation to the owner for the destruction, loss or injury by dogs for any sheep, lambs, goats, kids and other property and providing for damages to persons by dogs and also providing for taxation and protection of dogs and making dogs property and fixing punishment for any violation of this act."

It is clear, of course, that the title of the Act does cover the subjects of making dogs personal property and their taxation, although it does include other objects and purposes.

The question has been before this Court in many forms, and there has been a variety of opinions thereon. Early in the history of this State, it was held in *Shields and Preston v. Bennett, Auditor,* 8 W. Va. 74, that:

"The provision in the Constitution of this State, (Art. 6, sec., 30) that no law shall embrace more than one object, as qualified by the provision in the same section, that if any object shall be embraced in an act which is not expressed in the title, the act shall be void only as to so much thereof as shall not be so expressed, does not invalidate an act containing more than one object, when the objects are expressed in the title."

We think this has been the consistent holding of this Court up to the present day. The purpose of the constitutional provision aforesaid was to require the title of an Act to contain a statement of the objects and purposes of a pro-

posed enactment, so that there could not be incorporated in the body of the Act legislation to which there was no index in the title. If the objects of proposed legislation are clearly stated in the title, it serves the purpose which the framers of the Constitution evidently had in mind when they proposed Section 30 of Article VI. It is our opinion, therefore, that Chapter 83, Acts of the Legislature, 1925, was legally enacted and was effective as law from the date when the same went into effect. But, if there could be any doubt on this question, the same is removed by the further fact that Chapter 83 of the Acts of the Legislature, 1925, was later rewritten to some extent and incorporated in the Code of 1931. Article 20 of Chapter 19 of the Code now contains thirteen sections on the subject of dogs substantially as had been enacted by Chapter 83, Acts of the Legislature, 1925, and Chapter 13, Acts of the Legislature, 1929. Certain changes in said statutes were made in the drafting of the Code, but it is stated by the revisers that the article restores the law as contained in the Acts of 1925, Chapter 83, and the Acts of 1925, Chapter 13, Sections 49 to 52, inclusive.

The Code of 1931 was adopted by an Act of the Legislature of this State, the title to which reads:

"An act to revise, arrange and consolidate into a Code the general statutes of the State of West Virginia, and to repeal all acts and parts of acts of a general nature in force on the 31st day of December, nineteen hundred and thirty, subject to such limitations and exceptions as are provided in Chapter 63 of this Code."

The title of the Act is followed by the enacting clause which reads:

"Be it enacted by the Legislature of West Virginia: That the laws embraced in the following chapters, articles and sections, shall constitute the 'Code of West Virginia' and shall be so designated and cited."

Chapter 63, Article 1, of the Code, makes said Code effective on January 1, 1931, and expressly repeals all general

statutes in effect on the preceding day, except as are otherwise provided in said article, and then details the exceptions to the general repeal mentioned above. Undoubtedly, Chapter 83, Acts of the Legislature, 1925, was treated as being in force and effect immediately prior to the adoption of the Code of 1931. There was only one general object mentioned in the enactment creating the Code, and that was to codify and enact the general statutes of the State, and to repeal and make ineffective all statutes theretofore existing except those particularly excepted in Chapter 63 of the Code then being enacted. This being true, even if there had been a defect in the enactment of Chapter 83, Acts of the Legislature, 1925, it was, with immaterial exceptions, enacted as law under the general title quoted above.

In *Elite Laundry Co.* v. *Dunn,* 126 W. Va. 858, 30 S. E. (2d) 454, Section 30 of Article VI of the Constitution was discussed and it is stated in the body of the opinion that:

"* * * Also, from sheer impossibility this constitutional provision cannot be enforced with the same degree of rigor in an act comprehending the whole statutory law of the State, as in a simple statute. * * *"

Although we do not so decide in the case at bar, we question whether Section 30 of Article VI of the Constitution can have any application to the Act putting into effect the Code of 1931, as the statutory law of this State. We are of the opinion, therefore, that Chapter 83, Acts of the Legislature, 1925, together with all of the other sections in Article 20 of Chapter 19 of the Code, which were substantially contained in said 1925 enactment, were legally enacted.

The enactment of Chapter 19, Article 20, of the Code of 1931, being held to be valid, and same having been substantially based upon Chapter 83, Acts of the Legislature, 1925, it becomes important to determine the effect of the said enactment upon statutes theretofore existing on the subject of dogs, and their protection and taxation. It must

be borne in mind that one of the contentions of the defendant is that the dog alleged to have been stolen had not been taxed for the year 1949, and not having been taxed could not be the subject of larceny. It is contended by the defendant below that Sections 1 and 2, Chapter 19, Article 20, of the Code of 1931, properly construed, have not released the requirement of assessment for taxation to make dogs property, and the payment of taxes so imposed. It is stated in one of our cases that the first legislative enactment in this State for the protection of sheep from dogs was passed in 1875, and there may have been other similar enactments following that year. Chapter 29, Acts of the Legislature, 1908, amended three sections of and added one section to the Code relating to the protection of sheep and other animals from worrying and killing by dogs, and taxation and making dogs personal property. In the second paragraph of Section 9a-1 of said chapter it is provided:

> "That it shall be lawful, if he so choose, for the owner of any dog to have the same listed by the county assessor of any county of this state, the same as all other personal property is listed and taxed; and when the owner of such dog shall have paid the taxes assessed against the same, such dog shall be deemed property in the meaning of the law."

By Chapter 116, Acts of the Legislature, 1921, there was the amendment of Chapter 62 of the Code as it then existed, which covered in a comprehensive way the subject of the protection of domestic animals from dogs, but did not expressly repeal the provision of the Act of 1908 quoted above. Subsequent to the Act of 1908, it was not until the enactment of Chapter 83 of the Acts of the Legislature, 1925, that any statute was enacted on the question of whether or not a dog was property under the laws of the State. This also was a comprehensive statute relating chiefly to dogs, as respecting the right of protection of sheep and other domestic animals. As stated above, the first section of this Act specifically provided that any dog above the age of eight months should be the subject of

taxation, and be property. The exact wording of the statute is:

"Any dog above the age of eight months shall be subject to taxation and shall be and is hereby declared to be personal property within the meaning and construction of the laws of West Virginia."

The second paragraph of Section 1 of this Act, codified as Section 2 in the Code, made it the duty of the county assessor to levy taxes of $1.00 on each male dog and $2.00 on each female dog found within his jurisdiction, and providing that if the owner or keeper or person in possession of any dog refused to pay said tax, when assessed, or within fifteen days thereafter, it should be certified to the sheriff of the county to be thereafter collected. Provision was made for the sale of the dog and in some circumstances its eventual killing. It then provides that:

"In addition to this head tax on dogs, the owner of any dog above the age of eight months may and shall be permitted to place a value upon any dog owned by him and have such dog assessed as other personal property."

Section 2 of the Act, referred to as Section 5 in the Code, provides that dogs upon which taxes are paid shall be protected by law against injury or death, and also provides for civil recovery by the owner of a dog injured or killed, and making the injury or killing of a dog a misdemeanor.

In our opinion the enactment of the 1925 statute, and its subsequent inclusion in the Code of 1931, operated to repeal the provisions of Section 9a-1 of Chapter 29, Acts of the Legislature, 1908, which required as a prerequisite to the classification of dogs as property, the assessment of the same for the purpose of taxation by the assessor of the county. This statute was expressly repealed by the Act making effective the Code of 1931, and we do not have to hold that it was repealed by implication. It was a general law, and came within the provisions of the repeal

proposed in the title of the Act making the said Code effective, and Section 1 of Article 1, Chapter 63 of the said Code. But even aside from the effect of the enactment of the Code of 1931, and the repeal provision aforesaid, this Court, in the case of *State* v. *Michaels*, 103 W. Va. 634, 138 S. E. 199, decided in 1927, made this holding:

> "Where a statute is omitted from a subsequent Act on the same subject, and the later enactment manifestly expresses the entire legislative intent on that subject, the former statute is held to have been discarded, although it may not be inconsistent with the later."

In that case there had been an indictment based upon a part of Section 34, Chapter 116, Acts of the Legislature, 1921. The indictment charged the defendant with harboring a dog which he knew had worried, chased and killed sheep outside of defendent's enclosure. It was demurred to on the ground that Section 34 of Chapter 116, Acts of the Legislature, 1921, had been repealed by Chapter 83, Acts of the Legislature, 1925. In the opinion it is stated that in the Acts of 1925, the provision of the 1921 Act had been rewritten except the dog harboring law contained in the latter part of Section 34, and in effect the decision holds that such provision, not having been included in the latter Act, was no longer in effect, and the express holding of the Court was: "So much of Sec. 34, Ch. 116, Acts of 1921, as makes it a crime to harbor a sheep-killing dog, is repealed by Ch. 83 of the Acts of 1925." The 1925 statute did not purport to amend any other statute on the subject of dogs, although, as stated in the opinions discussed above, it did include some of the provisions of the 1921 statute. The *Michael's* case is, therefore, in our opinion, conclusive authority for the proposition that if failure to include the dog harboring provision, of the 1921 statute, in the subsequent and later comprehensive statute on the subject of dogs, had the effect of repealing that provision, then, necessarily, the 1925 Act would have the effect of repealing the 1908 statute on the question of how a dog might be treated as becoming property, when in the said

1925 statute there is a plain and definite enactment that all dogs above the age of eight months should be treated as property under the laws of this State. In view of all of these statutory enactments, and the decided cases on the subject, we are of the opinion that under Section 1 of Article 20 of Chapter 19 of the Code, all dogs above the age of eight months are property and the subject of larceny. In our opinion, Section 2 et seq. of Article 20, Chapter 19 of the Code, merely provides for the head taxation of dogs. and how they may be assessed as personal property for the purpose of taxation as other property is assessed, and how before a person may be convicted with respect to injury to a dog, or the owner may recover its value, the taxes required to be paid to the assessor, or to the sheriff, either as general taxes or as a head tax, must be paid before any one can be punished for the death or injury or a recovery had by the owner, and place a restriction upon the amount of such recovery to the amount at which the dog was assessed. Nothing in the statute seems to require taxes to be paid on a dog before becoming the subject of larceny. The first section of the Act in that opinion settles that question once and for all, and makes all dogs above the age of eight months the subject of larceny.

We have examined the various assignments of error in respect to the testimony offered and the giving of instructions in the trial. We note that all of the instructions requested by the defendant were given by the court. We find no error in the instructions given on behalf of the State. There was no objection to State's Instruction No. 1, and State's Instruction No. 2 was refused. We find no error in State's Instruction No. 3 on the question of reasonable doubt. State's Instruction No. 4 was refused. State's Instruction No. 5 seemed to have been amended by the court, although the extent of such amendment is not shown in the record. As given, we think it correctly stated the law. State's Instruction No. 6 merely told the jury that the possession of the dog alleged to be stolen by the person accused of the theft thereof might be considered in connection with all attending facts and circumstances of the

case. We think this is a correct statement of the law. The objections to testimony were, in our opinion, without merit, not being such that would justify reversal of the case on a ground of any alleged error in connection therewith. It may not have been important, in our view of the case, to hear testimony on the question of the taxation of the dog alleged to have been stolen, but if there was error it did not prejudice the defendant.

The remaining question is whether the evidence is sufficient to sustain the verdict returned by the jury, and this requires a brief statement of the facts of the case as they were presented to the jury by the testimony taken in the trial of the case.

There is little, if any, conflict in the evidence, on the guilt or innocence of the defendant but there is conflict in the contentions growing out of inferences to be drawn from the evidence and circumstances of the case, depending upon the view which a jury might take on all such evidence and circumstances. The identity of the dog, its ownership by R. A. Summers, and the taking of the dog by the defendant are all clearly established, as is the fact that the dog was in the possession of the defendant from the time he first took possession thereof to the time he returned to his home on Cabin Creek in Kanawha County. The circumstances, as shown by the evidence, under which the dog was carried away by the defendant, were as follows: One Orval O'Neal had been in the employ of R. A. Summers, the owner of the dog here involved. He had quit such employment and had left at the Summers' home in Nicholas County certain personal property, and on January 31, 1949, he, with the defendant, Thomas Voiers, and one Billy Stone, went to the residence of R. A. Summers in a station wagon for the purpose of removing O'Neal's property. It appears that they went to the Summers' home late in the evening or at night, because they speak of lights burning around the Summers' premises. Summers lived near the State highway; but there was a road leading from that highway some distance back to his dwelling house and barn. Defendant drove his

station wagon up that road to the Summers' premises and remained there some fifteen minutes. O'Neal left the station wagon and went either to the Summers' home or to the barn, presumably to get his property, and while he was absent the defendant, at the instance of Stone, drove down the road leading from the Summers' premises to the highway and down the highway some distance. Howard Summers, a boy of twelve years of age and the son of R. A. Summers, testified that while the defendant and Stone were driving down the road from his father's home to the highway he saw the collie dog, later alleged to be stolen by the defendant, in defendant's station wagon and no one denies this statement. The defendant later returned to the Summers' home and O'Neal's property was loaded into the station wagon, whereupon the two persons left the Summers' home, and somewhere around the gate near the State highway picked up Billy Stone and the three travelled in a southerly direction towards Gauley Bridge. Stone does not make any statement as to how the defendant obtained the possession of the dog. This is important in connection with the testimony of the defendant and O'Neal as to how the dog came into the possession of the defendant.

The defendant says that after they left the Summers' home the station wagon struck the dog, and seems to have injured one of its feet. It is not clear just where this collision and injury to the dog occurred. He speaks of the road as being wet and slick which indicates that it was on the road leading from the Summers' home to the highway, but in another part of his testimony he speaks of being on the county road. He says that he stopped his station wagon and found the injured dog, and not knowing to whom it belonged he carried it away, and he later doctored it and kept it around his home on Cabin Creek for several days, when it wandered away for a few days but later returned to the vicinity of his home. Some three weeks later it was found in the possession of either the defendant or his father at his father's home on Cabin Creek in Kanawha County. O'Neal, a witness for the State, who was in the station wagon with the defendant

at the time, corroborated the statement made by the defendant as to the incident of the injury to the dog and what immediately followed, but, as stated above, Stone makes no statement about that incident, which leads to the assumption that the dog may have been struck and placed in the station wagon before he was picked up on the highway, although he does say that he did not see the dog in the station wagon when he was picked up. According to his statement, he immediately went to sleep and did not wake up until they got to Gauley Bridge near which point there was an accident in which Stone was injured. The station wagon was wrecked and O'Neal and Voiers went by taxi from near Gauley Bridge to the defendant's home on Cabin Creek, Stone leaving them at Gauley Bridge. There is testimony of a state trooper, who investigated the wreck in which the defendant and others were involved, that there was a collie dog which the defendant claimed as his own in the station wagon. Another witness testified that he transported the defendant in a taxi and that he had with him what looked to him like a full stock collie dog, and that the defendant took the dog out of his taxi at Sharon on Cabin Creek. The defendant admits that at the time he struck the dog, and thereafter, he made no inquiry as who might be the owner of the dog. The only explanation he makes of his conduct is that when asked: "Did it not occur to you when you first picked that dog up on that night near the home of Mr. Summers that that dog did not belong to you and might belong to someone else?" To which he answered: "Well, it didn't occur none whatsoever, because I just figured it was crippled and I didn't see no houses around there, and I didn't want to leave it laying there. I had run up on its leg, and it was laying over on its shoulder."

This Court is loath to disturb the finding of a jury where the matter involved is one on which men might reasonably disagree, and which verdict has been approved by the trial court. While, as stated above, there is little conflict in the testimony, the circumstances disclosed do give rise to doubt as to the intent of the defendant when

he admmittedly took and carried away a dog which he knew was not his own. According to the statement of Howard Summers, the collie dog, which defendant afterwards took into his possession and carried away, was at the Summers' home when the defendant and others came there on the evening of January 31, 1949, and was seen in defendant's station wagon on the first trip which he made from the Summers' home down to the highway. If that statement be true, then it tends to contradict the statement of the defendant that when he struck the dog on his last trip away from the Summers' home and injured it and then took it into his car, he did not know to whom it belonged. If the statement of Howard Summers be true, the defendant must have known that the dog was either owned or in the possession of R. A. Summers. Admittedly, the defendant made no effort whatever to learn anything about the ownership of the dog. While we may commend the instincts which prevailed upon defendant to take the dog into his control for the purpose of healing its injuries, he might have accomplished the same purpose by making an effort to find the owner of the dog. It is clear that after he did take the dog into his possession he claimed it as his own, and never at any time made any effort to locate its owner, and either he or his father was in the possession of the dog at the time the officers came to Cabin Creek, along with the dog's owner, and regained its possession. Under all the evidence and circumstances of the case, we think the guilt or innocence of the defendant was clearly a question for the jury, and the evidence and circumstances do not create a situation where this Court would be warranted in setting aside the verdict on the ground of insufficient evidence to sustain the same.

The judgment of the Circuit Court of Nicholas County is affirmed.

*Affirmed.*