590 S.E.2d 670

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Joseph L. WATKINS, Defendant Below, Appellant.**

No. 31231.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 18, 2003.

Decided Dec. 3, 2003.

Concurring Opinion of Chief Justice Starcher Dec. 10, 2003.

Darrell V. McGraw, Jr., Esq., Attorney General, Colleen A. Ford, Esq., Assistant Attorney General, Charleston, for Appellee.

Max H. White, Esq., Keyser, for Appellant.

PER CURIAM.

Joseph L. Watkins appeals the sentence imposed upon him by the Tucker County Circuit Court on March 29, 2002, following a March 22, 2002 guilty plea for petit larceny. The twenty-four-year-old appellant was sentenced to the county jail for one year and

fined $2,500. The codefendant, Michael Maxwell, was sentenced to ninety hours of community service plus a fine of $300 following his March 22, 2002 guilty plea to the offense of stealing a dog. The issue on appeal is whether the appellant's sentence is disproportionate to the crime he committed and disparate to the sentence imposed on his codefendant. Upon our full review of these assignments of error against the record in this case, we find no error and accordingly, affirm the appellant's sentence.

## I.

### FACTS

On June 5, 2001, a Tucker County Grand Jury returned an indictment charging both the appellant, Joseph L. Watkins, and his codefendant, Michael L. Maxwell, with one count of grand larceny for stealing four hunting dogs and hunting paraphernalia including radio-tracking dog collars on or about December 29, 2000. The approximate total value of the dogs and the collars was $2,500; however, since the dogs were not registered with the county assessor's office nor were taxes paid on the dogs, the State agreed that they did not have a substantial monetary value.[1] As such, the value for the dogs and the radio tracking collars was below $1,000, leading to the plea by the appellant to the lesser offense of petit larceny.

The appellant and the codefendant confessed that they captured four dogs from the Horseshoe Run area in Tucker County and took them to their homes in neighboring Barbour County. The four dogs initially were kept at the codefendant's home and later taken to the appellant's home. Soon after the dogs were stolen, their identification tags as well as their radio tracking collars were removed by the appellant and the codefendant. The appellant disposed of the radio tracking collars near his home and later led Conservation Officer Brian Nuzum to that location where the collars were then recovered.

During a January 23, 2001, voluntary statement provided to Conservation Officers John Ozalas and Brian Nuzum, the appellant claims that he returned all four dogs "a mile or two up the road" from the owners' residence. Conversely, the owners believe the dogs were dropped off "six or seven miles" from their home and added that they, along with their sons, other family members, and community friends searched in sleet and snow storms in hopes of finding their dogs. Mr. and Ms. Sisler both addressed the circuit court and expressed their feelings that the appellant should not be granted mercy with regard to his sentencing. Ms. Sisler, added, "he stole our dog, he stole the tracking collars and it was in December of 2000 and here we are in 2002 and we still are searching for our dog." Ms. Sisler further argued that it

---

1. It appears that the circuit court and prosecutor were confused about whether the appellant could be liable for the larceny of a dog. Both the prosecutor and the circuit court believed that a dog was not personal property unless the owner paid taxes on the dog. *See State v. Voiers,* 134 W.Va. 690, 692, 61 S.E.2d 521, 523 (1950) ("It is conceded that at common law a dog could not be the subject of larceny, and this Court has so held. *State v. Blake,* 95 W.Va. 467, 121 S.E. 488; *State v. Arbogast,* W.Va. 133 W.Va. 672, 57 S.E.2d 715. However, by Code, 19–20–1, it is provided: 'Any dog above the age of eight months shall be subject to taxation and shall be and is hereby declared to be personal property within the meaning and construction of the laws of West Virginia.' "). Both the circuit court and prosecutor were incorrect, however, as in *State v. Voiers,* 134 W.Va. 690, 699, 61 S.E.2d 521, 526 (1950), we recognized that "[n]othing ... seems to require taxes to be paid on a dog before becoming the subject of larceny." *See also id.,* at 699, 61 S.E.2d at 526 ("[A]ll dogs above the

age of eight months [are] the subject of larceny."); *Julian v. DeVincent,* 155 W.Va. 320, 322, 184 S.E.2d 535, 536 (1971) ("The case of *State v. Voirs* [sic] ... held that a dog of proper age, as required by statute, which was not assessed for taxation purposes was property and subject to larceny."). The only limitation that *Arbogast* and *Voiers* recognized was that a dog had to be personal property which, under the version of W. Va.Code § 19–20–1 in effect at the time the cases were decided, required the dog to be over eight months of age. We take this opportunity to further observe that since these cases were decided, the legislature amended W. Va.Code § 19–20–1 in 1975 to provide that *"[a]ny dog* shall be and is hereby declared to be personal property within the meaning and construction of the laws of this State ...."* (Emphasis added). Therefore, the legislature has effectively overruled *Arbogast* and its progeny and has provided that *any* dog properly can be the subject of a larceny.

was her belief that the dogs would have never been returned "had [the appellant] not found out that we knew that he had them [and that he was] trying to sell them." Only three of the four dogs made it back to the owners' home, while the fourth dog, the mother and most valuable of the four dogs, has never been located. On March 29, 2002, the appellant was sentenced to the county jail for one year and fined $2,500.

## II.

## STANDARD OF REVIEW

■ This appeal requires this Court to review the sentence imposed upon the appellant. In Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997), we held that generally, "[t]he Supreme Court of Appeals reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands."

## III.

## DISCUSSION

### A. Disparate Sentencing

The appellant contends that the circuit court abused its discretion when it "sentenced two similarly situated and equally culpable codefendants, wherein [the codefendant] received a fine and community service, and [the appellant] received a fine of $2,500 and one year incarceration in the county jail." As a matter of initial importance, we believe it is necessary to clarify a substantial inconsistency within the appellant's brief. While the appellant correctly explains that he pled guilty to petit larceny, in an obviously erroneous statement in the appellant's petition and brief now before this Court, he inexplicably declares that the codefendant also pled guilty to petit larceny. Upon our review of the record, it is clear that the codefendant pled guilty to the separate and distinct offense of stealing a dog and *not*

petit larceny. Importantly, the two separate statutory offenses carry abundantly different penalties. Accordingly, the appellant's argument of disparate sentencing is inceptively defective.[2]

The appellant pled guilty to petit larceny as codified by West Virginia Code § 61–3–13 (1994) which provides:

> (b) If a person commits simple larceny of goods or chattels of the value of less than one thousand dollars, such person is guilty of a misdemeanor, designated petit larceny, and, upon conviction thereof, shall be confined in jail for a term not to exceed one year or fined not to exceed two thousand five hundred dollars, or both, in the discretion of the court.

Conversely, the codefendant pled guilty to stealing a dog in accordance with West Virginia Code § 19–20–12 (1984) which states:

> (b) Any person who shall intentionally and unlawfully steal a dog, cat, other animal or reptile as specified in subsection (a) of this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be ordered to provide public service for not less than thirty nor more than ninety days or fined not less than three hundred nor more than five hundred dollars, or both.

■ We have held that:

> Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

Syllabus Point 2, *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984).

In *State ex rel. Appleby v. Recht*, 213 W.Va. 503, 519, 583 S.E.2d 800, 816 (2002) (per curiam), *cert. denied*, — U.S. —, 123

---

**2.** Certainly we understand that in writing appellate briefs, as in any human endeavor, errors and mistakes are only to be expected. However, given the huge importance of the erroneous statement that appellant's counsel made in both

his petition for appeal and his appellate brief, the mistake, while apparently not deliberate, is very glaring and it is troublesome that it was not corrected before it reached this stage of the litigation.

S.Ct. 2618, 156 L.Ed.2d 638 (2003), the appellant in that case challenged our recidivist statute claiming that "in some instances this Court has affirmed recidivist sentences for some defendants, but has reversed the recidivist sentences for others, even though these defendants were convicted of the same offenses or had the same predicate felonies." We have explained that even assuming the accuracy of such an assertion that West Virginia's

> sentencing scheme might indeed permit another defendant guilty of the same crime to receive a lesser sentence .... that is no reason for altering [his] punishment or declaring the law unconstitutional. Judicial discretion naturally leads to discrepancies in sentencing, as [he] complains. But even wide sentencing discretion in the abstract is not a violation of due process or equal protection. [T]he issue is the appropriateness of the sentence given the defendant's crime: 'Discretion, even if it ends in grossly unequal treatment according to culpability, does not entitle a guilty defendant to avoid a sentence appropriate to his own crime.'

*Recht*, 213 W.Va. at 519, 583 S.E.2d at 816, *quoting Holman v. Page*, 95 F.3d 481, 486 (7th Cir.1996) (citation omitted).

Having reviewed the record, we do not believe that the appellant and the codefendant were similarly situated. Unlike the appellant, the codefendant pled guilty to the offense of stealing a dog carrying a penalty in which a convicted defendant "shall be ordered to provide public service for not less than thirty nor more than ninety days or fined not less than three hundred nor more than five hundred dollars, or both." The appellant pled guilty to petit larceny, and, "upon conviction thereof, shall be confined in jail for a term not to exceed one year or fined not to exceed two thousand five hundred dollars, or both, in the discretion of the court." *See e.g. People v. Eubanks*, 283 Ill. App.3d 12, 25, 218 Ill.Dec. 535, 669 N.E.2d 678, 686 (1996) ("defendant and [the codefendant] are not similarly situated because they were convicted of different crimes"). The appellant was the last person to have custody of the dogs and one of the dogs has never been found. Moreover, he released the dogs along the road in the middle of a snow storm instead of taking them directly to the owners' home.

We believe that the appellant's claim of disparate sentencing is untenable given the guilty pleas and subsequent convictions to two separate and distinct offenses by the appellant and the codefendant; it is clear that the appellant and the codefendant were not similarly situated; therefore, we find no merit to this assignment of error.

### B. Disproportionate Sentencing

The appellant also contends that the circuit court violated Article III, Section 5 of the West Virginia Constitution by sentencing him to the county jail for one year and fining him $2,500 following his March 22, 2002 guilty plea for petit larceny. He maintains that the sentence is excessive and disproportionate to the character and degree of his offense. He further argues that he has no prior criminal record or allegations noting his criminal conduct and that this "cries of a disproportionate sentence toward the [appellant]." Nonetheless, the appellant pled guilty to and was convicted of petit larceny and sentenced within the applicable statutory limits.

In Syllabus Point 8 of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), we explained:

> Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offense.'

Historically, this Court has declined to intervene in cases where judicially-imposed sentences are within legislatively prescribed limits. *State v. Cooper*, 172 W.Va. 266, 271, 304 S.E.2d 851, 855 (1983). In fact, we have held that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist

sentence." Syllabus Point 4, *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981). This Court explained in *Wanstreet* that:

> '[T]he robbery by violence statute is one of the few criminal statutes in our jurisdiction that enables the court to set a determinate sentence without reference to any statutory maximum limit. With the exception of the life recidivist statute discussed in *State v. Vance*, [164 W.Va. 216, 262 S.E.2d 423 (1980) ], we do not believe that the disproportionality principle can have any significant application other than to this type of sentencing statute.'

166 W.Va. at 531–32, 276 S.E.2d at 211, *quoting State v. Houston*, 166 W.Va. 202, 209, 273 S.E.2d 375, 379 (1980).

■ At the time of sentencing, the circuit court appropriately took into consideration the appellant's pre-sentence investigation report. The appellant did not have a criminal history, however, one of the four stolen dogs was never found. In addition, the circuit court considered the testimony of the owners' of the stolen dogs who described the anguish of searching for them during snow and sleet storms and how they were deeply impacted by the loss of the mother dog, "which was not only a fine hunting dog, but also a beloved pet and member of the family." They further requested no leniency with regard to sentencing for the appellant. The owners further declared that Marcy, the dog that was never recovered, was the mother of the other three stolen dogs and that she would never have left her pups during a snow storm. They stated that they believed the appellant either killed Marcy or sold her.

Moreover, the appellant was initially indicted for grand larceny for stealing hunting dogs and hunting paraphernalia worth approximately $2,500. Eventually, however, the appellant entered into an agreement with the State whereby he pled guilty to the lesser-included offense of petit larceny. This agreement fully informed the appellant that any plea bargaining was "not binding upon the Court with respect to punishment and probation . . . [and that he] could be confined in the regional jail for a term not to exceed one year or fined not to exceed $2,500, or both in the discretion of the Court[.]" Thus, the appellant voluntarily and intentionally entered into the plea agreement with the State with full knowledge of the sentence he could receive. While it is possible that we may have sentenced the appellant to a lesser sentence had we sat as the trial court, this alone does not automatically lead to the conclusion that a lower court abused its discretion in sentencing. We held in *State v. Allen*, 208 W.Va. 144, 155, 539 S.E.2d 87, 98 (1999), that:

> Typically, a grant of discretion to a lower court commands this Court to extend substantial deference to such discretionary decisions. Although this Court may not necessarily have obtained the same result had we been presiding over a case determined by a lower court, our mere disagreement with such a ruling does not automatically lead to the conclusion that the lower court abused its discretion.

With regard to the specific sentence imposed by the circuit court in *Allen*, we further delineated:

> With respect to the sentences imposed for Allen's numerous misdemeanor convictions, we find that the trial court properly sentenced the defendant in accordance with the statutorily-prescribed punishments for such crimes. As for the circuit court's decision to impose consecutive, rather than concurrent, sentences, we likewise find no abuse of discretion. At this juncture, however, we wish to emphasize that, while the members of this Court, had we been sentencing Allen for his numerous misdemeanor convictions, would not necessarily have ordered his sentences to run consecutively, this disagreement, standing alone, does not necessitate a reversal of the sentences imposed by the trial court. Finding no impermissible factors influenced the trial court's sentencing decision, we affirm the lower court's ruling.

*Allen*, 208 W.Va. at 155, 539 S.E.2d at 98.

■ Our system of criminal jurisprudence views a trial court's discretion during the sentencing phase of a criminal proceeding as a critical component of the process. *See State v. Head*, 198 W.Va. 298, 306, 480 S.E.2d

507, 515 (1996) (Cleckley, J., concurring) ("Circuit court judges have a right to believe that so long as they have not violated a law or acted in a nefariously discriminatory way in imposing sentences, this Court will not sift through the nooks and crannies of their decisions determined on finding that which is not there."). Moreover, in *State v. Sugg*, 193 W.Va. 388, 406, 456 S.E.2d 469, 487 (1995), we held that "[a]s a general proposition, we will not disturb a sentence following a criminal conviction if it falls within the range of what is permitted under the statute." We have further held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

In the instant case, the appellant's guilty plea and subsequent conviction to petit larceny led to a sentence completely within the statutory guidelines. Moreover, the appellant did not contend that the circuit court's sentencing was based upon any impermissible factors. The appellant was the last one with possession of all four dogs and only three of the dogs were ever found. In this instance, the circuit court did not violate the proportionality principle and did not abuse its discretion. Therefore, we affirm the appellant's sentence.

## IV.

## CONCLUSION

For the reasons stated above, we affirm the sentence imposed upon the appellant.

Affirmed.

Chief Justice STARCHER concurs and reserves the right to file a concurring opinion.

STARCHER, C.J., concurring.

(Filed Dec. 10, 2003)

This case involved a man who stole some very valuable hunting dogs and radio equipment, and for this crime he was sentenced to a year in jail. It was a rotten crime, although the offender apparently had no previous criminal record and it was not a crime of violence. I concur in the Court's judgment and opinion because the sentence of incarceration was within the sentencing judge's discretion.

However, I write separately because the sentence of incarceration in this case—although legally permissible—vividly illustrates the most important issue facing West Virginia's criminal justice system: our failure to use economical, non-incarceration, community-based sanctions for criminal misconduct.

West Virginia taxpayers are being required to spend large amounts of money on putting people in prisons and jails, at a time when our State's budget is said to be in crisis. At the same time, new technology like electronic bracelets (even with satellite tracking) will allow us to monitor offenders and protect society at a fraction of the cost of incarceration. And instead of sitting in a $20,000-a-year cell at the taxpayers' expense, we can get our offenders out *working*, to clean our streets and parks; and paying restitution to their victims.

The wasteful, unnecessary use of imprisonment is not limited to West Virginia. It is a national problem. In 1974, there were 1,819,000 U.S. adults who had at some time been incarcerated in a state or federal prison; that was 1.3% of our nation's population. Twenty-seven years later, in 2001, that number had *more than doubled*—to 5,618,000, or 2.7%.

In 1974, 8.7% of black Americans had ever been in prison. In 2001, the number is 16.6%. If current incarceration rates remain unchanged, Bureau of Justice statistics predict that *one in three black males*, one in six Hispanic males, and one in seventeen white males will go to prison sometime during their lives.

Put another way, at current rates, an astonishing *6.6% of all persons born in the United States in 2001 will go to state or federal prison during their lifetime*; this is up from 5.2% in 1991, and from *1.9% in 1974*.

Are we a safer society than we were in 1974? I don't think so.

These numbers are horrifying. They reflect our society's utterly failed reliance on imprisonment to try to deal with the problem of hard drugs, and politicians who are playing the knee-jerk politics of fear and vengeance.

We who have worked daily in the criminal justice system know what we need to deal with offenders effectively and economically, and it sure isn't more incarceration.

We need more treatment programs for drug addicts, and more day reporting centers and community corrections centers.

We need high-tech home confinement and offender monitoring systems, and we need a limited amount of secure imprisonment, with good in-house rehabilitation services, for the violent people who pose a true danger.

We need to get rid of mandatory minimum sentences, because they clog our jails and prisons with offenders who don't need that level of security.

The sentence in this case of a year in jail for a dog-stealer means that tens of thousands of dollars of taxpayer money will go to feed, clothe, house and give medical care to a person who should be outside, on supervised probation, *working,* to pay his debt to society and to his victim.

Multiply this offender's incarceration sentence by hundreds of other similar cases, and we can see why West Virginia is spending money that we need—for teachers and nurses and doctors and roads and bridges and schools—on wasteful, unnecessary imprisonment.