# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**
**June 13, 2023**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 22-0203** (Raleigh County CC-41-2019-F-85)

**Davide Laquan Hudson, Jr.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner appeals the Circuit Court of Raleigh County's March 1, 2022, sentencing order entered following his convictions for first-degree murder, three counts of kidnapping, and conspiracy, and the jury's finding that he used or presented a firearm in the commission of a felony.[1] Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

At petitioner's jury trial that resulted in these convictions, the evidence showed that petitioner, Antonio Williams, Tyrique Pearl, and Jonthan Bird were together most of the day on July 8, 2018.[2] While together, petitioner purchased ammunition for his revolver at Wal-Mart, and later, close to midnight, Mr. Bird drove the men to a convenience store, where they saw a car belonging to Amber Meadows. While pointing to Ms. Meadows's car, petitioner remarked that she had either robbed him of drugs or accompanied an individual who robbed him of drugs and, consequently, owed him money. Ms. Meadows was with two friends at the convenience store, Destiny Conkle and Arileah Lacy, and the four men and three women conversed in the convenience store parking lot for approximately an hour. Eventually, the women decided to accompany the men to a motel so that one or more of the women could obtain drugs from petitioner. Mr. Pearl rode with the women, and the remaining men followed them in Mr. Bird's car to the motel.

---

[1] Petitioner appears by counsel Robert P. Dunlap II, and the State appears by Attorney General Patrick Morrisey and Assistant Attorneys General Katherine M. Smith and Gail V. Lipscomb.

[2] Mr. Williams, Mr. Pearl, and Mr. Bird were indicted alongside petitioner, but each entered into a plea agreement with the State. Mr. Williams pled guilty to one count each of kidnapping and voluntary manslaughter (as a lesser included offense of first-degree murder) in exchange for the dismissal of the remaining charges. Mr. Pearl and Mr. Bird each pled guilty to conspiracy in exchange for the dismissal of the remaining charges.

1

According to Mr. Bird, as soon as the seven individuals entered their two-room motel suite, petitioner "pulls out his gun and says, 'Nobody is leaving until I say so.'" At petitioner's direction, chairs were positioned in front of the suite's doors, and petitioner collected the women's cell phones. Petitioner proceeded to point his fully loaded revolver at the women. He later removed all but one bullet from the cylinder so that, in Mr. Bird's words, petitioner "could turn [the cylinder] to a safe location, pull the hammer back, pull the trigger and it not fire[,] . . . sort of like Russian Roulette." Mr. Bird said the women were "terrified" and that petitioner terrorized the women with his gun in this manner "[c]ountless" times. Mr. Bird also testified that petitioner took Mr. Bird's gun, which had a laser, and "started pointing the laser at everybody in the room, myself included, saying, 'You could die, you could die, you could die.'" Ms. Conkle likewise testified that petitioner "played Russian Roulette with us over and over and over" and that he "put [the laser from Mr. Bird's gun] on us all the time."

The men and women remained in the motel suite through the early morning hours of July 9, 2018. During a time when Ms. Conkle and Ms. Lacy had gone to the bathroom in the adjoining room of the suite, petitioner began "frantically looking for his gun." Ms. Meadows alerted petitioner to its location. He reportedly grabbed it, looked at it, and said to Ms. Meadows, "You could have got me." Mr. Bird told petitioner, "No, she couldn't have, there's nothing in it," having forgotten that one bullet remained. Petitioner placed the gun to Ms. Meadows's head and said, "No, it's not. No, it's not. No, it's not." He then fired the gun, and Ms. Meadows dropped to the floor. As everyone else ran from the suite, Mr. Pearl testified that petitioner tried to stop him, saying, "We've got to finish the rest of them. . . . We've got to kill the rest of them." Mr. Pearl left with the other men, and Ms. Conkle drove herself and Ms. Lacy to a nearby restaurant where they called 9-1-1.

Investigating officers recovered from the motel suite a Wal-Mart receipt for the purchase of ammunition as well as a cardboard divider used in ammunition packaging. They also recovered a beer can, which was analyzed and shown to contain petitioner's DNA. Surveillance camera footage from the convenience store at which the seven individuals socialized was shown to the jury.

The jury found petitioner guilty of the first-degree murder of Ms. Meadows; of kidnapping Ms. Meadows, Ms. Lacy, and Ms. Conkle; and of conspiracy. It recommended that no mercy attach to petitioner's sentences for murdering and kidnapping Ms. Meadows but that mercy attach to the sentences imposed for kidnapping the other women. Finally, the jury made a finding that petitioner used or presented a firearm during the commission of a felony. The court thereafter sentenced petitioner in accordance with the jury's recommendations and the statutorily prescribed terms of incarceration. Petitioner now appeals, raising eight assignments of error.

Petitioner first argues that the circuit court erred in precluding him from introducing into evidence certain photographs. Generally, this Court reviews a trial court's evidentiary rulings for an abuse of discretion, Syllabus Point 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998); however, the circuit court here did not, in fact, preclude petitioner from admitting the photographs into evidence. Instead, the court—on several occasions—detailed for petitioner the proper evidentiary process for entering the photographs into evidence. Petitioner affirmed his

intention to follow that process and took steps in furtherance of adhering to that process, including requesting that a necessary witness remain subject to re-call and later requesting that the witness be instructed to leave the courtroom after she reentered, as she was still subject to a sequestration order. Despite taking these steps, petitioner ultimately failed to re-call the necessary witness, thereby abandoning pursuit of the photographs' admission. Under these facts, petitioner waived his right to admit the photographs and to claim error on the court's part.[3] *See* Syl. Pt. 8, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) ("When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error . . . .").

Next, petitioner claims error in the court's refusal to admit evidence of Ms. Conkle's charge of theft of a firearm and Ms. Lacy's charge of presentment of false information.[4] He argues that these "witnesses' testimony during trial was inconsistent with pending charges which would impeach their credibility," and he identifies the three requirements for admitting a witness's prior inconsistent statement set forth in *State v. Blake*, 197 W. Va. 700, 478 S.E.2d 550 (1996). However, it is unclear what relief petitioner believes *Blake* affords him, as he has identified no prior inconsistent statements of which the court precluded admission. Furthermore, petitioner's cross-examination of these witnesses touched on the charged crimes. Petitioner asked Ms. Conkle if she would "pick up and remove someone's firearm," which she denied,[5] and he asked Ms. Lacy if she would ever lie to a police officer. The State's objection to the latter question was sustained, but Ms. Lacy nevertheless continued, "I would not lie to a police officer about murder." Petitioner, accordingly, made use of these charges on cross-examination, and as it is unclear what more

---

[3] We find, too, that petitioner waived two additional assignments of error. In one, he claims that the court erred in allowing the State to elicit testimony regarding the men's involvement in a robbery on July 8, 2018, before meeting up with the women. Notably, petitioner also elicited testimony on this subject during cross-examination, but, more importantly, he failed to object to its introduction. We have long adhered to the raise or waive rule, which requires that a litigant timely object lest any right to later assign error to the claimed objectionable conduct be forfeited. *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). Similarly, petitioner failed to object to the State's closing argument, though he claims that those arguments were improper in another assignment of error. "Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syl. Pt. 2, *State v. Adkins*, 209 W. Va. 212, 544 S.E.2d 914 (2001) (quoting Syl. Pt. 6, *Yuncke v. Welker*, 128 W. Va. 299, 36 S.E.2d 410 (1945)).

[4] Petitioner also claims error in the court's refusal to admit evidence of a charge of child neglect resulting in injury that Ms. Lacy faced. But at trial, petitioner raised only the prospect of introducing evidence of Ms. Lacy's presentment of false information charge. He said, "[W]e are not going after the child abuse crime. . . . I was completely going to avoid the [child neglect causing injury charge]." Accordingly, we will not entertain any claim that the court erred in failing to admit evidence petitioner did not seek to admit.

[5] In fact, petitioner went so far as to mark for identification the charging document, but he never sought to move it into evidence. He also withdrew the later-asked question, "Have you ever taken a firearm before?"

3

petitioner believes the court should have allowed, petitioner has failed to demonstrate that the court abused its discretion.[6] *See Rodoussakis*, 204 W. Va. at 61, 511 S.E.2d at 472, Syl. Pt. 4.

Petitioner also asserts that plain error[7] occurred when Ms. Conkle and Ms. Lacy allegedly overheard bench conferences addressing certain of the State's objections and when the investigating officer responded affirmatively to the State asking if the officer believed that petitioner committed the crimes of kidnapping and murder. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, Syl. Pt. 7. We dispose of these claims by readily concluding that petitioner's substantial rights were not affected by either alleged issue. "Normally, to affect substantial rights means that the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court." *Id.* at 18, 459 S.E.2d at 129. The evidence against petitioner was substantial, consisting of several eyewitness accounts, DNA evidence that placed him at the scene, and physical evidence corroborative of the eyewitness accounts. He has not shown that, if Ms. Conkle and Ms. Lacy overheard bench conferences, the outcome of his trial would have been different. Nor has he shown that a different verdict would have obtained had the investigating officer not testified that he believed petitioner kidnapped the three women and murdered Ms. Meadows.[8] Indeed, the indictment charging petitioner with these crimes said as much.

Petitioner next claims that the State failed to disclose impeachment evidence as required under *Brady v. Maryland*, 373 U.S. 83 (1963), and *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982). Specifically, the State failed to disclose that Ms. Conkle had been charged with theft of a firearm and that Ms. Lacy had been charged with child neglect resulting in injury and

---

[6] Although petitioner has failed to outline what more he sought to or could have asked these witnesses, any error in failing to permit more extensive cross-examination on the pending charges was harmless. The witnesses were questioned to some extent regarding these charges, so petitioner was able to challenge their credibility; plus, the evidence against petitioner was overwhelming. As a result, "it is highly probable [that any] error did not contribute to the judgment." *State v. Guthrie*, 194 W. Va. 657, 684, 461 S.E.2d 163, 190 (1995) (citation omitted). Finally, to the extent petitioner sought to admit the charging documents, Rule 608(b) prohibits the admission of "extrinsic evidence . . . to attack or support the witness's character for truthfulness," with the exception of a "criminal *conviction* under Rule 609." (Emphasis added.) The charging documents were therefore inadmissible as no convictions had been obtained.

[7] Petitioner acknowledges his failure to object to these claimed errors and specifically invokes the plain error doctrine. *See* W. Va. R. App. P. 10(c)(3) ("If the issue was not presented to the lower tribunal, the assignment of error must be phrased in such a fashion as to alert . . . the Supreme Court to the fact that plain error is asserted.").

[8] Nevertheless, we caution against eliciting such testimony. As we found in *State v. Bowling*, testimony like that elicited here is not admissible because it does not assist the jury in resolving a factual issue. 232 W. Va. 529, 551, 753 S.E.2d 27, 49 (2013) (citing W. Va. R. Evid. 701 & 702). Although we find that the error was harmless, the determinations encompassed within the officer's testimony are for the jury's resolution. *See id.* at 551-52, 753 S.E.2d at 49-50.

presentment of false information. The State also failed to disclose that Ms. Lacy was under federal investigation for providing false information on a form necessary for the purchase of a firearm. That investigation culminated in Ms. Lacy's arrest shortly after petitioner's convictions.[9]

> There are three components of a constitutional due process violation under *Brady* . . . and *Hatfield*[:] . . . (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, in part, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). All three components must be established, *State v. A.B.*, 247 W. Va. 495, ---, 881 S.E.2d 406, 419 (2022), so petitioner's failure to demonstrate that the allegedly withheld evidence was material is dispositive of the claim.[10] "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Peterson*, 239 W. Va. 21, 29-30, 799 S.E.2d 98, 106-07 (2017) (quoting *State v. Fortner*, 182 W. Va. 345, 353, 387 S.E.2d 812, 820 (1989)). The withheld evidence is "evaluated in the context of the entire record," *A.B.*, 247 W. Va. at ---, 881 S.E.2d at 419 (quoting *United States v. Agurs*, 427 U.S. 97 (1976)), and a showing must be made that "the 'favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). Here, we have already noted that petitioner made use of most of these charges during his cross-examination of Ms. Lacy

---

[9] Petitioner also argues that the evidence regarding the investigation and arrest of Ms. Lacy constitutes newly discovered evidence, usable "for impeachment purposes," which entitles him to a new trial. Typically, a new trial will be denied where the "sole object" of the claimed newly discovered evidence is to impeach a witness, but if the evidence comes within certain rules, a new trial will be granted. Syl. Pt. 2, *State v. Stewart*, 161 W. Va. 127, 239 S.E.2d 777 (1977) (setting forth the rules within which newly discovered impeachment evidence must fall to warrant a new trial). We need not belabor the claim because two of those rules speak to affidavits that petitioner has not submitted. *See id.* Furthermore, the evidence "must be such as ought to produce," here, a not guilty verdict. *Id.* For the same later-explained reasons that the evidence is not material under *Brady*, we find that it is not such as ought to produce a not guilty verdict.

[10] We note further that evidence is "suppressed" under the second prong of *Youngblood* when

> the existence of the evidence was known, or reasonably should have been known, to the government, the evidence was not otherwise available to the defendant through the exercise of reasonable diligence, and the government either willfully or inadvertently withheld the evidence until it was too late for the defense to make use of it.

*State v. Peterson*, 239 W. Va. 21, 29, 799 S.E.2d 98, 106 (2017) (quoting *Youngblood*, 221 W. Va. at 31 n.21, 650 S.E.2d at 130 n.21). Because most of the evidence that is the subject of this assignment of error was available to petitioner through the exercise of reasonable diligence and, in fact, used at trial, petitioner cannot show that that evidence was suppressed.

and Ms. Conkle, and we know that petitioner was nevertheless convicted. Given the wealth of evidence in support of petitioner's convictions—including from witnesses whose testimony remains unchallenged and largely mirrors that of Ms. Conkle and Ms. Lacy—evidence of an additional charge and investigation (to the extent this evidence would have been usable under the Rules of Evidence) would not have cast the whole case "in such a different light as to undermine confidence in the verdict." *Id.*

Lastly, in petitioner's final assignment of error he asserts that his sentences are disproportionate and disparate from those received by his codefendants. He argues that his sentence shocks the conscience because he received four life sentences while his codefendants received lesser sentences, and he asserts that he and his codefendants were similarly situated because his codefendants participated in and were charged with the same crimes, are of ages similar to petitioner, and have limited prior criminal histories.

> Punishment may be constitutionally impermissible . . . if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

Syl. Pt. 5, in part, *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983). And in evaluating proportionality, "disparate sentences of co-defendants that are similarly situated may be considered." *Id.* at 271, 304 S.E.2d at 856. Petitioner and his codefendants are not similarly situated. Petitioner was convicted of first-degree murder, three counts of kidnapping, and conspiracy, whereas two codefendants were convicted only of conspiracy and the third was convicted of conspiracy and voluntary manslaughter. Where there have been "guilty pleas and subsequent convictions to two separate and distinct offenses by the appellant and the codefendant," we have found a disparate sentencing claim "untenable." *State v. Watkins*, 214 W. Va. 477, 481, 590 S.E.2d 670, 674 (2003). Moreover, "[d]isparate sentences for codefendants are not per se unconstitutional" as, at sentencing, courts may consider, among other factors, "each codefendant's respective involvement in the criminal transaction." Syl. Pt. 2, in part, *State v. Buck*, 173 W. Va. 243, 314 S.E.2d 406 (1984). It was petitioner who sought to avenge an alleged drug theft, who took the victims' phones and announced that no one was to leave the motel suite, who primarily terrorized the women with the guns,[11] and who murdered Ms. Meadows. Petitioner's sentences are not disproportionate.

For the foregoing reasons, we affirm.

Affirmed.

---

[11] Evidence was adduced that Mr. Williams also pointed a gun at the victims, hence his voluntary manslaughter conviction.

**ISSUED:** June 13, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn