# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### September 2015 Term

**FILED**

**October 7, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Nos. 14-0484 and 14-1198

**STATE OF WEST VIRGINIA,**
Plaintiff Below, Respondent

v.

**JERRY LEE HEDRICK,**
Defendant Below, Petitioner

Consolidated Appeals from the Circuit Court of Mineral County
The Honorable Phil Jordan, Judge
Criminal Case No. 09-F-58

**AFFIRMED, IN PART, REVERSED, IN PART,
AND REMANDED**

Submitted: September 23, 2015
Filed: October 7, 2015

Nicholas T. James, Esq.
The James Law Firm, PLLC
Keyser, West Virginia
Lonnie Simmons, Esq.
DiTrapano Barrett DiPiero
McGinley & Simmons
Charleston, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Benjamin F. Yancey, III, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.  "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. pt. 1, *State v. Watkins*, 214 W.Va. 477, 590 S.E.2d 670 (2003).

2.  "The suspension of a sentence coupled with probation is a critical stage of the trial proceedings and due process of law, therefore, requires that an accused be furnished the assistance of counsel and that counsel be present when the terms or conditions of probation are established or modified." Syl. pt. 3, *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976).

**Justice Ketchum**:

These consolidated appeals concern supervised release mandated for certain sex offenses pursuant to *W.Va. Code*, 62-12-26 [2009]. The petitioner, Jerry Lee Hedrick, was convicted in Mineral County of two counts of sexual abuse in the first degree, and his sentence included placement on supervised release for twenty-five years. Hedrick first served consecutive terms in the penitentiary and was placed on parole. His supervised release commenced upon his discharge from parole.

Hedrick is the principal owner of a vacation facility, open to the public, known as Smoke Hole Caverns and Resort. Until recently, he was a long-term resident on the property. The terms of Hedrick's supervised release require him to comply with a number of conditions governing his conduct. Appeal no. 14-0484 concerns Hedrick's challenge to two of those conditions: (1) that he is not to be employed at Smoke Hole Caverns and Resort in any capacity and (2) that he is not to visit Smoke Hole Caverns and Resort, including the gift shop located on the property. The circuit court denied Hedrick's motion to strike those conditions. Hedrick asks this Court to reverse and direct the circuit court to strike those conditions from the terms of his supervised release.

1

Appeal no. 14-1198 arose from the State's petition to revoke Hedrick's supervised release for alleged transgressions, such as possessing ammunition and locking a gate to a farm owned by Hedrick in Pendleton County. The circuit court declined to revoke Hedrick's supervised release. However, the court, *sua sponte*, entered an order which set forth additional conditions governing Hedrick's conduct. One of those conditions banned him from his Pendleton County farm. Hedrick asserts that the additional conditions are unreasonable and that the circuit court abused its discretion in imposing them.

For the reasons stated below, this Court upholds the two conditions in appeal no. 14-0484, banning Hedrick from Smoke Hole Caverns and Resort. We also uphold the additional conditions at issue in appeal no. 14-1198, except for the condition banning Hedrick from his Pendleton County farm. Procedural due process mandates that we reverse the ruling of the circuit court as to that condition and remand this case for a hearing at which Hedrick shall have the right to have his counsel present. In all other respects, the final orders in these consolidated appeals are affirmed.

## I. Appeal No. 14-0484
### Factual and Procedural Background

Smoke Hole Caverns and Resort, located in Grant County, was purchased by Hedrick in 1977 and is a family business which Hedrick operated with his wife and their three grown children. Hedrick and his wife are majority and minority owners of the business,

2

respectively. The Resort includes a maintenance complex which houses Hedrick's equipment, machinery and tools. Hedrick's marital residence was on the property. Hedrick and his wife are now estranged, and Hedrick resides elsewhere at this time. In addition to his Resort ownership, Hedrick owns various tracts of land, including a farm in Pendleton County and in Bath County, Virginia.[1]

In July 2008, a Grant County grand jury returned an indictment charging Hedrick with two counts of sexual abuse in the first degree under *W.Va. Code*, 61-8B-7(a)(1) [2006]. According to the State, Hedrick, forcibly touched the buttocks and breasts of a twenty-five year old female employed as a housekeeper at the Resort.[2] The victim left the premises and never returned to her employment.

Venue was transferred to Mineral County on Hedrick's motion, and a trial was conducted in May 2009. Hedrick was found guilty on both counts. On September 9, 2009, Hedrick signed an acknowledgment of sex offender registration requirements, and on October 21, 2009, he signed a document entitled "Sex Offender Conditions." Although the document allowed for other conditions "as appropriate," it did not address Hedrick's

---

[1] The appendix record includes a pre-sentence investigation report showing that, as of 2004, Hedrick's assets exceeded $7,000,000.

[2] *W.Va. Code*, 61-8B-7(a)(1) [2006], states that a person is guilty of sexual abuse in the first degree when such person "subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion."

3

employment or presence at Smoke Hole Caverns and Resort.

On October 26, 2009, the circuit court entered an order sentencing Hedrick to two consecutive penitentiary terms of one to five years and directed him to pay a fine of $10,000 on each count. The order further directed that Hedrick would be under supervised release for twenty-five years following full discharge of his sentence or after completion of parole, whichever is applicable. The supervised release was imposed pursuant to *W.Va. Code*, 62-12-26 [2009]. That statute provides that criminal defendants convicted of certain sex offenses, including sexual abuse in the first degree, shall be required to serve a period of supervised release, "in addition to any other penalty or condition imposed by the court." No specific conditions associated with supervised release were imposed by the circuit court in the October 26, 2009, order.

Hedrick's initial appeal to this Court was accepted solely to consider the constitutionality of the supervised release portion of his sentence. His appeal was consolidated in *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011), with the appeals of two other defendants convicted of sex related offenses. Rejecting the appellants' constitutional challenges, this Court, in *James*, concluded that *W.Va. Code*, 62-12-26 [2009], was neither impermissibly vague nor violated a criminal defendant's right to a jury determination of relevant factual matters. Therefore, the statute did not violate the

4

appellants' right to due process of law. This Court further concluded, in *James*, that the statute did not violate constitutional protections against cruel and unusual punishment and double jeopardy. However, in *James*, this Court noted that an evaluation of Hedrick indicated that he was "at least at a moderate risk for recidivism and reoffending." 227 W.Va. at 417, 710 S.E.2d at 108.

Hedrick was placed on parole following his incarceration in the penitentiary. Although, initially, he was not allowed to enter the Resort property, that restriction was lifted by his parole officer. Hedrick's wife, however, obtained an emergency domestic violence protective order from the Grant County Family Court barring him from the property. The appendix record does not disclose the grounds for the emergency order. That order was terminated by the Family Court in September 2013. Hedrick was discharged from parole on January 14, 2014. His twenty-five year term of supervised release commenced at that time.

Soon after, Hedrick signed two forms pertaining to his supervised release. On January 21, 2014, Hedrick signed a form entitled "Rules and Regulations Governing Probationers" which set forth various conditions of release, including a handwritten restriction that Hedrick was "not to be employed at Smoke Hole Resort in any capacity." Two days later, on January 23, 2014, Hedrick signed an additional form entitled "Terms and Conditions of Supervised Release" which set forth other conditions, including a handwritten restriction providing that

Hedrick could have "no employment or visitation at Smoke Hole Caverns or gift shop property as defined in the general terms."[3] The Terms and Conditions of Supervised Release form further provided that Hedrick would conform his conduct "to such additional requirements as the Probation Officer may from time to time temporarily impose as the circumstances warrant."

Only the signature of Hedrick and the signatures of probation officers appear on the two forms. The probation officers were the source of the handwritten conditions. Hedrick signed the forms out of the presence of his counsel and approximately four years after the entry of the 2009 sentencing order which initially directed that Hedrick would be under supervised release.

In February 2014, Hedrick's counsel filed a motion in the circuit court to strike the two handwritten conditions prohibiting Hedrick from employment and visitation at the Resort. Asserting abuse of discretion in imposing the conditions, the motion alleged that Hedrick had completed his prison term and period of parole without any disciplinary problems and that he had paid all restitution and court costs. In addition, the motion alleged that Hedrick had been employed at the Resort since 1977 and that the two conditions were

---

[3] Some of the conditions set forth in the two forms overlapped, such as the directive to remain gainfully employed and the prohibition against possessing firearms.

inconsistent with the requirement of his supervised release that he remain gainfully employed. Moreover, the motion to strike alleged that the two conditions unfairly deprived Hedrick of his property.

Following a hearing in March 2014, at which Hedrick was represented by counsel, the circuit court denied the motion to strike. The motion was again denied in a final order entered on August 18, 2014. Enforcing the two handwritten conditions barring Hedrick from Smoke Hole Caverns and Resort, the circuit court concluded that the conditions were reasonable because, as "one of the most hated people in Grant County," Hedrick's presence at the Resort could have a negative economic impact on the business. The circuit court further concluded that the two conditions do not unfairly deprive Hedrick of his property.[4] The appeal to this Court, no. 14-0484, followed.

## II. Appeal No. 14-1198
## Factual and Procedural Background

In September 2014, the Grant County prosecutor filed a petition in the Circuit Court of Mineral County to revoke Hedrick's supervised release. Although the petition described Hedrick's alleged violations as largely "technical," the relief sought was a transfer of Hedrick

---

[4] The circuit court noted that the offenses resulting in Hedrick's convictions occurred on the Resort property.

7

to the West Virginia Department of Corrections for incarceration. The State's allegations, and Hedrick's responses, were the subject of an evidentiary hearing conducted on September 22, 2014, at which Hedrick was represented by counsel.

The evidence of the State was that on February 12, 2014, probation officers found ammunition and fireworks at Hedrick's Pendleton County farm in an old house used for storage. The house was in disrepair and unoccupied. Both the Rules and Regulations Governing Probationers and the Terms and Conditions of Supervised Release, signed by Hedrick, prohibited him from owning or possessing any firearms or other lethal weapon, including gunpowder. Hedrick denied knowledge of the items. His son, Josh, age thirty-five, testified that the ammunition and fireworks were his and not Hedrick's and had been forgotten, since the items had been in the storage building from the time Josh was in middle school.

The State's next allegation was that, in July 2014, an officer observed some ammunition in an ATV 4-wheeler parked on Hedrick's Pendleton County farm. Hedrick testified that he did not know who owned the ATV and submitted evidence to the effect that vehicles commonly traverse, or park, on the property because of a right-of-way belonging to neighboring farms. Shaylon Miller testified at the hearing that he owns a neighboring farm with a right-of-way over Hedrick's land and that the ATV and the ammunition belonged to

8

the Miller family.

The State also alleged that, in August 2014, Hedrick failed to keep his supervision officer informed of his in-State travel plans when he left the county for several days to attend the West Virginia State Fair in Lewisburg. Although Hedrick left a message on the officer's cell phone stating that he was leaving for the State Fair, he did not keep the officer informed about how long he would be gone or where he would be staying. While at the Fair, Hedrick spent several hours talking to family members, and others, at a promotional booth operated by Smoke Hole Caverns and Resort. One of Hedrick's family members testified that his presence at the booth made her feel uncomfortable. The State asserted that the banning of Hedrick from the Resort should be interpreted to include the Resort's promotional booth at the State Fair in Lewisburg.

In response, Hedrick testified that, while at the State Fair, he made a second call to his supervision officer but was unable to reach him. Hedrick was gone for four nights, sleeping in his truck for two nights and at a motel for two nights. Hedrick testified that his purpose in going to the Fair was to visit with his grandchildren.

Finally, the State alleged that Hedrick committed a violation on August 16, 2014, when he locked the gate to his Pendleton County farm and parked his vehicle behind a barn.

9

The State asserted that Hedrick was told to keep the gate unlocked when he was on the property so that officers could determine his whereabouts. Hedrick denied that any conversation about locking the gate took place and asserted that the lock was for the protection of his livestock and farm equipment. Hedrick raises cattle and dogs on the property. Hedrick stated that a swinging bridge in the area provides an alternative means of accessing his property.

At the conclusion of the hearing, the circuit court indicated that the conditions of Hedrick's supervised release needed clarification and that a hearing for that purpose was warranted.[5] The hearing, however, was never conducted.

Instead, on October 29, 2014, the circuit court entered a final order with the following findings: (1) Based on the testimony of Hedrick's son, the presence of the ammunition and fireworks in the storage building on the Pendleton County farm was not a violation of Hedrick's supervised release; (2) however, the presence of the ammunition in the ATV was a "technical" violation; (3) the locking of the gate and the parking of Hedrick's vehicle in a concealed manner on the Pendleton County farm constituted efforts to evade supervision and were violations of Hedrick's supervised release; (4) Hedrick's failure to inform his

---

[5] The circuit court stated: "I believe under the code I have to give, anybody changing the rules had to give notice of that hearing and some idea what those changes are going to be."

10

supervision officer of his in-State travel to the State Fair, although a transgression of the spirit of the terms of Hedrick's supervised release, was not a violation; (5) similarly, Hedrick's presence at the promotional booth, although a transgression of the spirit of the order prohibiting him from Resort property, was not a violation.

Upon those findings, the circuit court imposed the following additional conditions of Hedrick's supervised release:

I. Effective January 1, 2015, "Jerry Hedrick is prohibited from going to the 500+ acre farm in [Pendleton] County."

II. "The ban of Jerry Hedrick entering Smoke Hole Caverns Property and maintenance complex is hereby expanded to include any and all off-site locations that Smoke Hole Caverns may use to promote or conduct business. This includes, but is not limited to, the annual booth at the State Fair and any booths set up at local fairs or festivals. This is effective immediately."

III. "Jerry Hedrick may not travel overnight in-state without expressed permission from ISO [Hedrick's Intensive Supervision Officer]. He must provide details of his plans including where he will stay and any other information requested by ISO. He may not attend the West Virginia State Fair."

IV. Finally, noting that Hedrick was previously convicted of a federal wildlife felony, the circuit court stated: "Jerry Hedrick is hereby prohibited from participating in all hunting activities. He cannot accompany other hunters into the woods or fields. This is effective immediately."

The October 29, 2014, order concluded: "Serving 25 years in prison is hanging over his head. Any future violations will likely result in Mr. Hedrick's dying in prison." The

11

appeal to this Court, no. 14-1198, followed.[6]

### III. Standard of Review

This Court's standard of review is the same as to both Hedrick's appeal from the August 18, 2014, order, no 14-0484, denying his motion to strike the two handwritten conditions and his appeal from the October 29, 2014, order, no 14-1198, which set forth additional conditions I through IV of his supervised release. In syllabus point 4 of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), we stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." *Accord* syl. pt. 1, *State v. Messer*, 223 W.Va. 197, 672 S.E.2d 333 (2008); syl. pt. 1, *State v. Davis*, 199 W.Va. 84, 483 S.E.2d 84 (1996).

Moreover, the conditions at issue in both appeals are derivative of Hedrick's original sentencing order, entered in 2009, which directed that he would be under supervised release for twenty-five years following the discharge of his sentence or after completion of parole. Thus, in syllabus point 1 of *State v. Watkins*, 214 W.Va. 477, 590 S.E.2d 670 (2003), this Court confirmed the following standard of review with regard to sentencing orders in

---

[6] In December 2014, the circuit court entered a stay of the October 29, 2014, order, as it specifically relates to the ban from the Pendleton County farm, on the condition that Hedrick immediately provides a key to the gate to his supervision officer.

12

criminal cases: "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." *Accord* syl. pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

## IV. Discussion

### A.
### Appeal No. 14-0484
### The Handwritten Conditions

Hedrick contends that his right to procedural due process was violated because the two handwritten conditions prohibiting him from employment and visitation at Smoke Hole Caverns and Resort, in Grant County, were imposed outside the presence of his counsel. Thus, according to Hedrick, the conditions were void *ab initio*.[7] In addition, Hedrick contends that the two handwritten conditions are unreasonable and, therefore, should have been eliminated from the terms of his supervised release.

At the time of Hedrick's sentencing in 2009, supervised release was authorized pursuant to *W.Va. Code*, 62-12-26 [2009].[8] That statute provides that criminal defendants

---

[7] U.S. Const. Amend V and amend. XIV provide that no person shall be deprived of life, liberty or property without due process of law. Similarly, W.Va. Const. Art. III, § 10, provides that no person shall be deprived of life, liberty or property without due process of law.

[8] Subsequent amendments of *W.Va. Code*, 62-12-26 [2009], are not applicable in this case.

convicted of certain sex offenses, including the offense of sexual abuse in the first degree, shall be required to serve a period of supervised release, "in addition to any other penalty or condition imposed by the court." In this case, Hedrick's supervised release, although imposed at sentencing, commenced upon his discharge from parole.

*W.Va. Code*, 62-12-26 [2009], provides, in subsections (a) and (g), that supervised release is subject to modification. Subsection (g) states, in relevant part, that the circuit court may:

> Extend a period of supervised release if less than the maximum authorized period was previously imposed or modify, reduce or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, *consistent with the provisions of the West Virginia Rules of Criminal Procedure relating to the modification of probation* and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.

(emphasis added)

Moreover, under subsection (g) of *W.Va. Code*, 62-12-26 [2009], the circuit court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release "if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release."

14

The reference in subsection (g) to the *Rules of Criminal Procedure* relating to the modification of probation is of importance to Hedrick's assertion of a procedural due process violation. Rule 32.1.(b) of the *West Virginia Rules of Criminal Procedure* addresses the modification of probation and states, in part: "A hearing and assistance of counsel are required before the terms of probation can be modified."

A procedural due process violation was discussed in *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976). Among the terms of the petitioner's probation, in *Louk*, were the conditions that he live and work on a certain farm and that the farm owner would become the petitioner's "volunteer probation officer." Those requirements were imposed by the trial court in the absence of the petitioner's counsel. The petitioner subsequently left the farm, and his probation was revoked. Reinstating probation, this Court, in *Louk*, concluded:

> To the extent, however, that the conditions were established or modified by the trial court in the absence of the petitioner and his counsel, they are void as violative of procedural due process. The conditions, therefore, which required the petitioner to live and work on the Isner farm and the provision substituting J. Herman Isner as a voluntary probation officer, having been in the first instance established in the absence of counsel and in the second instance modified in the absence of the petitioner and his counsel, are void and unenforceable.

159 W.Va. at 493, 223 S.E.2d at 788.

Accordingly, in syllabus point 3 of *Louk* we held:

15

The suspension of a sentence coupled with probation is a critical stage of the trial proceedings and due process of law, therefore, requires that an accused be furnished the assistance of counsel and that counsel be present when the terms or conditions of probation are established or modified.

*Accord State v. Duke*, 200 W.Va. 356, 365, 489 S.E.2d 738, 747 (1997).[9]

Hedrick's circumstances, however, are significantly different from those in *Louk*. It is true that the two handwritten conditions were imposed out of the presence of Hedrick's counsel, through the "Rules and Regulations Governing Probationers" form and the "Terms and Conditions of Supervised Release" form. Hedrick signed those forms in late January 2014. Almost immediately, in February 2014, Hedrick's counsel filed the motion in the circuit court to strike those conditions. The motion was filed in the absence of any allegations by the State that Hedrick had violated the conditions by stepping foot on the Resort property. Hedrick simply challenged the merits of the two conditions in a prompt manner. His motion to strike resulted in the March 2014 hearing before the circuit court at which he was represented by counsel. The circuit court denied the motion in a well-reasoned final order entered on August 18, 2014. Such a proceeding did not occur in *Louk*. Hedrick's assertion of a denial of procedural due process, in appeal no. 14-0484, is without merit.

---

[9] We observed, in *Louk*, that the liberty of an accused "is no less 'affected' because probation is considered an act of grace. Due process cannot be denied a probationer by such reasoning. Every condition of probation constitutes a restriction of liberty and violation of any condition may result in imprisonment." (citations omitted) 159 W.Va. at 492-93, 223 S.E.2d at 787.

Hedrick further contends that the two handwritten conditions prohibiting him from employment and visitation at Smoke Hole Caverns and Resort, in Grant County, are unreasonable. In support, Hedrick emphasizes that, having purchased the property in 1977, he is the majority owner of the business and considers the Resort to be his place of residence and employment. He also emphasizes that he has a maintenance complex at the Resort which houses his equipment, machinery and tools. Finally, Hedrick states that the female victim of his sexual abuse convictions is no longer present on the property and that he completed his periods of incarceration and parole without any disciplinary problems.

This Court noted, in *Louk*, that any condition of probation imposed in the discretion of a circuit court must be reasonable. *Louk*, however, distinguished the placement of a probationer at a specific employment location from a directive prohibiting certain employment. This Court, in *Louk*, stated: "We do not here imply that prohibiting certain employment during the term of probation is beyond the authority of the trial judge. *Indeed, it may be entirely proper, considering the nature of the crime, to isolate and insulate the defendant from certain temptations*." (emphasis added) 159 W.Va. at 495, 223 S.E.2d at 789. That admonition suggests the "deferential abuse of discretion" standard of review of *Watkins* and *Lucas*, *supra*, to be utilized on this issue.

While Hedrick insists that his residence and employment is on the property, Smoke

17

Hole Caverns and Resort is a vacation facility open to the public. In *James*, *supra*, wherein Hedrick challenged the constitutionality of *W.Va. Code*, 62-12-26 [2009], this Court referred to an evaluation of Hedrick which stated that he was "at least at a moderate risk for recidivism and reoffending." 227 W.Va. at 417, 710 S.E.2d at 108.[10] Moreover, during the March 2014 hearing on the motion to strike, the circuit court commented that it was "common knowledge in the county that Mr. Hedrick was a concern for the young girls that worked there as well as the other women" and that, in moving for a change of venue in the underlying trial, Hedrick's counsel stated that Hedrick "was the most hated man in Grant County." In the latter regard, the circuit court indicated that Hedrick's reputation would "hurt getting employees" for the Resort and that Hedrick's financial interest in the property would be enhanced by his absence. Hedrick owns other tracts of land, including a farm in Pendleton County and in Bath County, Virginia. Finally, as the State points out, Hedrick has access to at least some of his equipment, machinery and tools through his son.

---

[10] The opinion in *James* described Hedrick's offenses as follows:

> Although Mr. Hedrick's case did not involve a minor, crimes of violence against the person were nonetheless involved. The twenty-five-old victim of Mr. Hedrick's uninvited and unwelcome sexual advances was an employee - a subordinate requesting time off from her boss. Mr. Hedrick took advantage of this disparate relationship and attempted to intimidate the young woman (who was thirty years his junior) in order to obtain sexual favors. The victim was so shaken by the experience that she never returned to the workplace.

227 W.Va. at 417, 710 S.E.2d at 108.

Hedrick's challenge to the two handwritten conditions prohibiting him from Smoke

Hole Caverns and Resort must give way to protecting the public from future offenses. *See*

*United States v. Henson*, 22 Fed. Appx. 107 (4th Cir. 2001) ("A special condition of

supervised release may restrict fundamental rights when the special condition is narrowly

tailored and is directly related to deterring the defendant and protecting the public.") (internal

quotation omitted). We find that the two handwritten conditions are reasonable and that the

circuit court did not abuse its discretion in denying Hedrick's motion to strike.


**B.**
**Appeal No. 14-1198**
**The Additional Conditions**


This appeal arose from the Grant County prosecutor's September 2014 petition to

revoke Hedrick's supervised release and transfer Hedrick to the Department of Corrections

for incarceration. The Circuit Court of Mineral County conducted an evidentiary hearing on

September 22, 2014, at which Hedrick was represented by counsel. The circuit court

declined to revoke Hedrick's supervised release. However, the court, *sua sponte*, entered an

order on October 29, 2014, which set forth additional conditions governing Hedrick's

conduct. Those conditions (1) prohibited Hedrick from going to his 500+ acre farm in

Pendleton County; (2) banned him from all off-site locations that Smoke Hole Caverns and

Resort may use to promote or conduct business; (3) mandated that Hedrick provide detailed

information and obtain permission from his supervision officer with regard to overnight, in-

State travel, and, furthermore, prohibited Hedrick from attending the State Fair; and (4) prohibited Hedrick from all hunting activities.

Hedrick contends that his right to procedural due process was violated because the new conditions were imposed without the further hearing the circuit court mentioned during the evidentiary hearing of September 22, 2014. Hedrick further contends that the additional conditions are unreasonable.

Hedrick's due process assertion again implicates the provisions of *W.Va. Code*, 62-12-26(g) [2009], W.Va. R. Crim. P. 32.1.(b), and *Louk* for the principle that a hearing and assistance of counsel are required before the terms of probation, or supervised release, can be modified. Moreover, Hedrick cites *W.Va. Code*, 62-12-26(h) [2009], which states that the defendant shall be provided with a written statement "*at the defendant's sentencing hearing that sets forth all the conditions to which the term of supervised release is subject.*" (emphasis added)

As to Hedrick's latter point, however, the document entitled "Sex Offender Conditions" he signed in October 2009, just prior to his sentencing, allowed for other conditions "as appropriate." In addition, the "Terms and Conditions of Supervised Release" form signed in January 2014 provided that Hedrick would conform his conduct "to such

additional requirements as the Probation Officer may from time to time temporarily impose as the circumstances warrant." Manifestly, as the State points out, changes along the way are necessary to effectuate supervised release. Hedrick's locking the gate to his farm and his presence at the State Fair are matters which arose later in time.

The remainder of Hedrick's due process assertion is also without merit. All four conditions added by the circuit court to the terms of Hedrick's supervised release were derivative of the allegations in the State's petition to revoke, as well as the evidence submitted by both parties at the September 22, 2014, hearing. Although another hearing was not conducted, the September 22, 2014, hearing constituted a *de facto* proceeding on the merits of the additional conditions, during which Hedrick was represented by counsel.

*Louk* stands for the proposition that any condition of probation which is "imposed in the discretion of the trial court must be reasonable." 159 W.Va. at 495, 223 S.E.2d at 788. In the current matter, Hedrick does not contest condition III which addresses his overnight, in-State travel. He does contest, however, his ban from the Resort's off-site locations, such as its promotional booth at the State Fair. This Court is of the opinion that Hedrick's claim of unreasonableness on that point is difficult to sustain in view of the evidence before the circuit court. While at the Fair, Hedrick spent considerable time talking to family members and others at the Resort's promotional booth. In imposing the ban, the circuit court stated

21

in the October 29, 2014, order:

> The Court finds that Mr. Hedrick hung around the Smoke Hole Caverns booth at the State Fair for several days. Mr. Hedrick was aware that the Court had previously prohibited him from Smoke Hole premises. This was not a violation of the language of that Order. It was, however, another huge breach of the spirit of that Court Order.

The appendix record reveals that Hedrick's presence at the promotional booth was uncomfortable to members of his family and was potentially detrimental to the Resort's business. The condition is reasonable, and the circuit court did not abuse its discretion in imposing it as part of Hedrick's supervised release.

The prohibition of Hedrick from all hunting activities was likewise reasonable and within the circuit court's discretion. In imposing that condition, the circuit court emphasized that, in addition to Hedrick's ban from owning or possessing firearms or other lethal weapons, he was previously convicted of a federal, wildlife felony.

Finally, in the October 29, 2014, order, the circuit court added the condition that Hedrick is prohibited from his 500+ acre farm in Pendleton County. That condition was grounded on the State's allegation that Hedrick had violated his supervised release by possessing ammunition and fireworks, locking the gate to the farm, and parking his vehicle in a concealed manner.

Following the September 22, 2014, hearing, the circuit court found that the ammunition and fireworks found in the storage building belonged to Hedrick's son, had been in the bulding many years, and did not constitute a violation of Hedrick's supervised release. The presence of the ammunition in the ATV, however, was determined to be a "technical" violation. Nevertheless, the evidence submitted by Hedrick demonstrated that the ammunition belonged to a neighbor and that vehicles, such as ATVs, commonly traverse, or park, on the property by virtue of a right-of-way belonging to neighboring farms. Moreover, although the circuit court found that locking the gate and parking the vehicle in a concealed manner were violations, Hedrick maintained that those matters were never previously included in the terms of his supervised release. In addition, he explained that he began locking the gate to protect his livestock and farm equipment and that a swinging bridge in the area provides an alternative means of accessing his property. Finally, Hedrick testified that his vehicle was never concealed. Rather, it was parked at his barn to keep it out of the heat on warm days and to unload supplies.

Hedrick uses the 500 acre farm to raise cattle and dogs. The available evidence indicates that he alone tends the property and animals. In imposing the prohibition, no provision was set forth in the October 29, 2014, order concerning the prospective maintenance of the farm, and no reference was made to the farm in relation to Hedrick's underlying convictions. If Hedrick violates this condition by stepping foot on the farm, he

potentially faces twenty-five years of incarceration. Without eliminating this condition as a matter of law, this Court finds the prohibition of Hedrick from his Pendleton County farm highly restrictive and on the borderline of reasonable discretion. The prohibition warrants a more detailed analysis by the circuit court. We, therefore, remand this case to the circuit court on this limited issue.

## V. Conclusion

This Court affirms the August 18, 2014, order of the Circuit Court of Mineral County, in appeal no. 14-0484, which denied Hedrick's motion to strike the two handwritten conditions prohibiting him from employment and visitation at Smoke Hole Caverns and Resort. In appeal no. 14-1198, we affirm the circuit court's October 29, 2014, order which sets forth additional conditions of Hedrick's supervised release, except for the condition banning Hedrick from his Pendleton County farm. We reverse the October 29, 2014, order as to that condition and remand this case for a hearing at which Hedrick shall have the right to have his counsel present. Thereafter, the circuit court shall enter a final order with findings of fact and conclusions of law on whether Hedrick should be prohibited from his Pendleton County farm.

**Affirmed, in part, Reversed, in part, and Remanded**.