IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-0197

_____

FILED

**November 7, 2023**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

V.

RUSTY ALLEN WHITE,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Jefferson County
The Honorable Debra McLaughlin, Judge
Case No. CC-19-2018-F-31

AFFIRMED
_____

Submitted: October 10, 2023
Filed: November 7, 2023

Christian J. Riddell, Esq.                     Patrick Morrisey, Esq.
The Riddell Law Group                          Attorney General
Martinsburg, West Virginia                     William E. Longwell, Esq.
Attorney for the Petitioner                    Assistant Attorney General
                                               Charleston, West Virginia
                                               Attorneys for the Respondent

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      When reviewing an order modifying or revoking a defendant's supervised release under West Virginia Code § 62-12-26(h), we apply a three-pronged standard of review. We review the circuit court's final order and decision to modify or revoke a defendant's supervised release under an abuse of discretion standard; we review challenges to findings of fact under a clearly erroneous standard; and we review questions of law and interpretations of statutes de novo.

2.      *United States v. Haymond*, 588 U.S. ___, 139 S. Ct. 2369, 204 L. Ed. 2d 897 (2019), does not apply to a supervised release revocation pursuant to West Virginia Code § 62-12-26 because § 62-12-26 does not require a mandatory minimum sentence upon revocation.

3.      "In order for the State to prove a conspiracy under *W. Va. Code*, 61-10-31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syllabus point 4, *State v. Less*, 170 W. Va. 259, 294 S.E.2d 62 (1981).

i

**BUNN, Justice:**

Petitioner Rusty Allen White appeals the Circuit Court of Jefferson County's February 16, 2022 order revoking his supervised release and sentencing him to a two-year term of imprisonment. In this appeal, Mr. White claims that the circuit court erred in denying his motion to dismiss the petition seeking to revoke his supervised release pursuant to West Virginia Code § 62-12-26. He argues that any additional term of imprisonment, outside the underlying statutory maximum term of the crime of conviction, required factual findings by a jury beyond a reasonable doubt. He also claims that the court erred by finding by clear and convincing evidence that he conspired to deliver a controlled substance. We disagree, as a revocation of supervised release pursuant to West Virginia Code § 62-12-26 does not require factual findings by a jury, and the evidence supported the court's factual finding and the following revocation of Mr. White's supervised release.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In June 2018, Mr. White entered a no contest plea to sexual assault in the third degree, a violation of West Virginia Code § 61-8B-5. On October 1, 2018, the circuit court sentenced Mr. White to one to five years imprisonment. His sentence included ten years of supervised release pursuant to West Virginia Code § 62-12-26. On the same day, Mr. White signed a six-page document notifying him of his supervised release terms and conditions. He acknowledged that he understood those terms and conditions and agreed to

1

comply with them. The terms and conditions included that he "shall not violate any law of this state, any other state, any municipality, or of the United States" and that he "shall not use, consume, purchase, possess, or distribute any narcotics, marijuana, or other controlled substance, unless prescribed to him . . . by a physician." The acknowledgement included that if he violated "any of the terms and conditions," Mr. White would "be subject to immediate arrest, with or without a warrant," by his supervising probation officer. He did not appeal the sentence for his underlying conviction.

Mr. White completed the sentence of imprisonment[1] and began his ten-year term of supervised release on January 14, 2021. On November 19, 2021, a probation officer filed a petition in the circuit court alleging that Mr. White violated the conditions of his supervised release, including the conditions regarding violating a law of this State or of the United States, and prohibiting the use, consumption, purchase, possession, or distribution of controlled substances. The petition alleged that Mr. White tested positive for cocaine and was charged and arrested for conspiracy to deliver crack cocaine.[2] Mr. White filed a motion to dismiss the petition, claiming that he had served his sentence and could not be

---

[1] In the supervised release revocation hearing, Mr. White reported that he served fifteen months imprisonment and a year on parole.

[2] The probation officer amended the petition in January 2022 to add an allegation involving obtaining money by false pretenses, which is of no consequence to his appeal because the circuit court found that the State failed to prove that allegation by clear and convincing evidence.

sentenced to further incarceration "based on any factual finding made without the aid of a jury trial." The State opposed the motion.

The court denied Mr. White's motion to dismiss and held a contested hearing regarding the allegations in the petition. Sergeant Justin Harper with the Martinsburg City Police Department testified about the allegation of conspiracy to deliver crack cocaine. He told the circuit court that he conducted a traffic stop of Mr. White's truck after he noticed a defective brake light. Mr. White was driving the truck and had a passenger, Mr. Joseph Garner. When Sgt. Harper asked Mr. White to step out of the vehicle, the officer noticed signs of crack use around the floorboard of Mr. White's seat: small pieces of copper scrub pad that Sgt. Harper explained users often stuff into a pipe to prevent crack from falling into their mouths. While Sgt. Harper found no controlled substances on Mr. White, he found 16.4 grams of crack cocaine in Mr. Garner's pants, as well as $1,900 cash. Sgt. Harper testified that amount was "a lot" of crack cocaine, confirming that it was "more crack than for normal personal use."

Significantly, Sgt. Harper also found a sandwich bag behind the seat in Mr. White's vehicle with the corner torn off. He testified that "typically" means "they're packaging crack cocaine for sale." Sgt. Harper explained that sellers "will put a small amount of crack in the corner of a sandwich bag, tie it off and rip the other part of the bag

3

off so you're left with a sandwich bag that's either missing one or both corners."[3] He also found used bags that looked like corners from plastic bags, as described above, in Mr. White's vehicle.

Mr. White informed Sgt. Harper that he was dropping Mr. Garner off at Mr. Garner's residence around the corner. Law enforcement did a knock and talk at the residence, where they encountered Mr. White's wife along with Cynthia Allen, Mr. Garner's significant other. Ms. Allen admitted drugs were inside the house, and law enforcement subsequently obtained a search warrant for that residence. Law enforcement found $2,700 cash, 13.6 grams of powdered cocaine, 90 grams of marijuana, 6.7 grams of crack cocaine, 1.4 grams of suspected heroin, five Suboxone strips, eight oxycodone pills, two pistols, and two digital scales. Many of these items were in plain view when law enforcement stepped into the apartment. Some of the crack cocaine was "actively being cooked" when law enforcement arrived. Sgt. Harper testified that the amounts of substances found by law enforcement were dealer amounts, or more than personal use amounts.

---

[3] Defense counsel asked Sgt. Harper on cross-examination, "if drug dealers are cutting bags like this for the purposes of holding drugs and distributing them[,] then by natural logic any buyer would then come in possession of those same baggies; right?" Sgt. Harper disagreed, responding "No. Not a sandwich bag with the corner removed because if you're buying the drugs and they're packaged, why would you need to package them again unless you're distributing them?"

On cross-examination, defense counsel asked Sgt. Harper if he charged Mr. White for conspiracy to deliver. When Sgt. Harper confirmed the charge, defense counsel then asked, "What is your evidence of an agreement or tacit understanding between Mr. White and Mr. Garner to jointly engage in the distribution of crack?" Sgt. Harper catalogued the evidence before the circuit court at the time:

> There's signs of crack use in his vehicle. There's evidence that crack or some type of [controlled dangerous substance] is being packaged inside his vehicle. One subject has all of the money [and] crack. The other subject has the car with signs of drug use and packaging material inside the car.
>
> . . . .
>
> . . . They state that they're driving from 7-Eleven back to Garner's house. So if his wife is at his house, wouldn't logic say that they left the house and went to 7-Eleven and came back? If he was buying crack from Mr. Garner inside the vehicle, there was a whole lot of crack already packaged at Mr. Garner's house so why would he need to drive anywhere to do a deal when his wife is sitting in plain view of a bunch of crack?

Mr. White's counsel inquired whether there was any other evidence of conspiracy, and Sgt. Harper answered that dealers typically "don't ride around with crack in their underwear[,]" but they place it there when the police pull them over. Sgt. Harper explained that fact also contributed to Mr. White's knowledge that drugs were in his vehicle.

5

Defense counsel noted that he did not intend to dispute the allegation in the petition regarding Mr. White's use of a controlled substance. Still, the State presented evidence, and Mr. White's probation officer testified that in October 2021, he asked Mr. White whether he had used controlled substances after Mr. White took a drug analysis test that showed positive results for controlled substances. Mr. White informed the probation officer that he had not, so the probation officer sent the specimen to the lab for confirmation. The probation officer explained that the lab results showed that the specimen was positive for "benzo . . . the metabolite of cocaine."

After hearing the evidence and argument from counsel, the circuit court determined that Mr. White violated conditions of his supervised release, finding by clear and convincing evidence that Mr. White possessed and used cocaine and conspired to deliver crack cocaine. The court revoked his supervised release and sentenced Mr. White to two years imprisonment and explained that upon release he would continue to serve supervised release until the expiration of his ten-year term. [4] Mr. White now appeals.

---

[4] The supervised release statute, West Virginia Code § 62-12-26, entitled "Extended supervision for certain sex offenders; sentencing; conditions; supervision provisions; supervision fee," provides the following regarding the revocation of supervised release:

> (h) **Modification of conditions or revocation.** – The court may:
>     . . . .

6

## II.

## STANDARD OF REVIEW

Section 62-12-26 of the West Virginia Code governs the imposition of a period of supervised release and any subsequent modification or revocation of supervised release. When considering appeals regarding supervised release revocations or modifications, this Court has applied assorted standards of review that relate to other determinations by a circuit court, although the standards applied by this Court have generally provided for a de novo review for questions of law and challenges to findings of fact under a clearly erroneous standard. In *State v. Hargus*, a 2013 consolidated appeal challenging the constitutionality of revoking a defendant's supervised release, this Court recited the standard of review as de novo. *Hargus*, 232 W. Va. 735, 739, 753 S.E.2d 893, 897 (2013) (quoting Syl. pt. 1, *State v. Rutherford*, 223 W. Va. 1, 672 S.E.2d 137 (2008) for the proposition that "'[t]he constitutionality of a statute is a question of law which this Court reviews *de novo*.'"). Two years later, when reviewing consolidated appeals regarding certain conditions of supervised release in *State v. Hedrick*, this Court applied the standard

---

(3) Revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release[.]

7

of review set forth in Syllabus point 4 of *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).[5] *Hedrick*, 236 W. Va. 217, 223, 778 S.E.2d 666, 672 (2015). The *Burgess* standard of review reads as follows: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*'" Syl. pt. 4, *Burgess*, 196 W. Va. 178, 469 S.E.2d 114.[6]

More recently, in *State v. Johnny Ray D.*, No. 20-0009, 2021 WL 3833254 (W. Va. Aug. 27, 2021) (memorandum decision), and *State v. Stephens*, No. 19-1103, 2021

---

[5] The defendant in *State v. Hedrick* also challenged certain conditions of supervised release imposed by probation officers. 236 W. Va. 217, 220-21, 778 S.E.2d 666, 669-670 (2015).

[6] *Accord Hedrick*, 236 W. Va. at 223, 778 S.E.2d at 672 (citing two criminal cases that used the standard of review from *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996): Syl. pt. 1, *State v. Messer*, 223 W. Va. 197, 672 S.E.2d 333 (2008) (per curiam) and Syl. pt. 1, *State v. Davis*, 199 W. Va. 84, 483 S.E.2d 84 (1996) (per curiam)). In *Hedrick*, the Court also noted that the appeals derived from the defendant's original sentence, so additionally recited the following standard of review:

> [I]n syllabus point 1 of *State v. Watkins*, 214 W. Va. 477, 590 S.E.2d 670 (2003), this Court confirmed the following standard of review with regard to sentencing orders in criminal cases: "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)."

236 W. Va. at 223, 778 S.E.2d at 672 (omission in *Watkins*). *See* Syl. pt. 1, *id.* (quoting Syl. pt. 1, *Watkins*, 214 W. Va. 477, 590 S.E.2d 670 (per curiam)).

8

WL 1550260 (W. Va. Apr. 20, 2021) (memorandum decision), the defendants challenged the revocation of their supervised release on multiple grounds. In both cases, this Court applied the traditional standard of review relating to sentencing, without applying the three-factor test that the Court used in *Hedrick*. Both *Johnny Ray D.* and *Stephens* noted as the standard of review that this Court "'reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.'" *Johnny Ray D.*, 2021 WL 3833254, at *2 (omission in original) (quoting Syl. pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)); *Stephens*, 2021 WL 1550260, at *3 (same). Both *Johnny Ray D.* and *Stephens* also recited Syllabus point 4 of *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982), stating "'[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.'" *Johnny Ray D.*, 2021 WL 3833254, at *2 (alterations in *Johnny Ray D.*); *Stephens*, 2021 WL 1550260, at *3 (alterations in *Stephens*).

Meanwhile, in a memorandum decision issued between the *Johnny Ray D.* and *Stevens* decisions, the Court applied the same standard to a supervised release revocation order that this Court applies to the revocation of probation. *See State v. Raymond B.*, No. 20-0605, 2021 WL 2580715, at *2 (W. Va. June 23, 2021) (memorandum decision). *Raymond B.* recited Syllabus point 1 of *State v. Duke*, 200 W. Va. 356, 489 S.E.2d 738 (1997):

> When reviewing the findings of fact and conclusions of law of
> a circuit court sentencing a defendant following a revocation

9

of probation, we apply a three-pronged standard of review. We review the decision on the probation revocation motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a de novo review.

*Raymond B.*, 2021 WL 2580715, at \*2. *Raymond B.* also employed the standard of review found in Syllabus point 1, in part, of *Lucas*, 201 W. Va. 271, 496 S.E.2d 221. *Raymond B.*, 2021 WL 2580715, at \*2 (noting that sentencing orders are reviewed under a deferential abuse of discretion standard and quoting Syl. pt. 1, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011), a consolidated appeal involving the initial imposition of supervised release, which also quoted *Lucas*).

While the parties in this case cite different precedent, they agree that this Court (1) should review de novo Mr. White's assertion of a violation of his constitutional rights and (2) should review the findings of fact by the circuit court under a clearly erroneous standard.[7] We agree.

---

[7] The State suggested that this Court apply the three-prong standard of review found in Syllabus point 1 of *State v. Duke*, 200 W. Va. 356, 489 S.E.2d 738 (1997), relating to revoking a defendant's probation. The State also cited the *Lucas* standard of review, found in Syllabus point 1 of *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997), which provides an abuse of discretion standard of review for sentencing orders, and noted that the Court relied on that standard in *Raymond B.*, No. 20-0605, 2021 WL 2580715, at \*2 (W. Va. June 23, 2021) (memorandum decision).

Similarly, Mr. White suggested that the question of law be reviewed de novo, citing Syllabus point 1 of *State v. Head*, 198 W. Va. 298, 480 S.E.2d 507 (1996), which concerned the denial of a Rule 35 motion made pursuant to the West Virginia Rules of

However, given the assorted standards referenced by our earlier opinions and memorandum decisions, albeit usually similar, we find that we must clarify the standard of review applicable to our review of a circuit court's order modifying or revoking a defendant's supervised release pursuant to West Virginia Code § 62-12-26(h). We have set forth individualized three-prong standards of review for at least two post-conviction considerations: (1) a circuit court's revocation of probation, found in Syllabus point 1, *Duke*, 200 W. Va. 356, 489 S.E.2d 738, quoted above, and (2) an order concerning a Rule 35 motion made under the West Virginia Rules of Criminal Procedure,[8] found in Syllabus point 1, *State v. Head*, 198 W. Va. 298, 480 S.E.2d 507 (1996).[9] These standards of review follow the standards listed in Syllabus point 4 of *Burgess*, 196 W. Va. 178, 469 S.E.2d 114, yet are tailored to the post-conviction considerations. Therefore, we now hold that when

---

Criminal Procedure. Mr. White further suggested that this Court apply the clearly erroneous standard for the factual findings from *Hedrick*, 236 W. Va. at 223, 778 S.E.2d at 672, which partially concerned a revocation of supervised release and borrowed its standard from Syllabus point 4 of *Burgess*, 196 W. Va. 178, 469 S.E.2d 114.

[8] A Rule 35 motion requests the correction of a sentence or the reduction of a sentence. *See* W. Va. R. Crim. P. 35.

[9] Syllabus point 1 of *Head*, 198 W. Va. 298, 480 S.E.2d 507, reads as follows:

In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

reviewing an order modifying or revoking a defendant's supervised release under West Virginia Code § 62-12-26(h), we apply a three-pronged standard of review. We review the circuit court's final order and decision to modify or revoke a defendant's supervised release under an abuse of discretion standard; we review challenges to findings of fact under a clearly erroneous standard; and we review questions of law and interpretations of statutes de novo.[10]

## III.

## DISCUSSION

After finding that the revocation of Mr. White's supervised release did not violate his constitutional rights, we next determine that the circuit court did not clearly err by finding, by clear and convincing evidence, that he conspired to deliver crack cocaine, in violation of conditions of his supervised release.

### *A. The Constitutionality of a Sentence Imposed*
### *for Violating the Terms and Conditions of Supervised Release*

Mr. White argues that the circuit court erred by denying his motion to dismiss the probation officer's petition seeking revocation of his supervised release, and that it further erred by revoking his supervised release and sentencing him to two years of

---

[10] *See* Syl. pt. 4, *Burgess*, 196 W.Va. 178, 469 S.E.2d 114 (employing a similar standard of review in a civil case regarding issues including attorney's fees and costs). *See also Hedrick*, 236 W. Va. at 223, 778 S.E.2d at 672 (applying *Burgess* three-part standard of review in an appeal concerning a supervised release revocation).

imprisonment. He asserts that the two-year sentence was outside of "the maximum contemplated by the statutory penalty" of his underlying conviction, and that the court violated his Fifth and Sixth Amendment rights under the United States Constitution, because a judge found the facts determining that he had violated conditions of his supervised release, rather than a jury applying a "beyond a reasonable doubt" standard.

To properly address Mr. White's arguments, we first briefly discuss supervised release in West Virginia. The supervised release statute, West Virginia Code § 62-12-26, provides that a person convicted of certain sex offenses, including sexual assault in the third degree, must serve a period of supervised release up to fifty years.[11] The supervised release period, which is a "part of the sentence imposed at final disposition," begins at the latest date of the end of a defendant's period of probation, incarceration, or parole supervision.[12] W. Va. Code § 62-12-26(a), (d). The terms of supervised release that a person must follow include "any or all of the conditions applicable to a person placed

_____

[11] While the circuit court imposed Mr. White's original sentence, including a period of supervised release, in 2018, the Legislature amended West Virginia Code § 62-12-26 in 2020 and again in 2021. No substantive changes affect the statute's application to Mr. White in this case, although some subsections have been renumbered since 2018. As the language of the provisions at issue have not changed, we refer to the 2021 version of the statute throughout this opinion.

[12] The supervised release period is "'in addition to any other penalty or condition imposed by the court.'" *Hedrick*, 236 W. Va. at 224, 778 S.E.2d at 673 (quoting W. Va. Code § 62-12-26). *See also State v. James*, 227 W. Va. 407, 418, 710 S.E.2d 98, 109 (2011) (finding that "§ 62-12-26(a) reflects the legislative intent to impose a new and additional penalty to the sentence of a person convicted of certain enumerated offenses").

13

upon probation." W. Va. Code § 62-12-26(f). If a person violates a condition of his supervised release, and the circuit court finds by clear and convincing evidence that violation occurred, the circuit court may revoke the person's supervised release and require that the person serve time "in prison." W. Va. Code § 62-12-26(h)(3). The statute does not require the court to impose any minimum term of imprisonment.

Mr. White relies on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), and *United States v. Haymond*, 588 U.S. ___, 139 S. Ct. 2369, 204 L. Ed. 2d 897 (2019), for the proposition that he has already served the maximum time applicable to his underlying sexual assault conviction and, without a jury trial, he cannot be sentenced to additional incarceration related to his supervised release revocation. He argues that the additional sentence of two years imprisonment violates his rights under the Fifth and Sixth Amendments to the United States Constitution. We disagree.

In *Apprendi*, the United States Supreme Court considered the constitutionality of a defendant's sentence where a charged crime had a ten-year statutory maximum term of imprisonment, yet a judge-found enhancement increased the potential term of imprisonment. *Apprendi*, 530 U.S. at 470-71, 120 S. Ct. at 2352. The state court sentenced the defendant to twelve years imprisonment on that count, and the defendant appealed the enhanced sentence. *Id.* at 471, 120 S. Ct. at 2352. *See id.* at 474, 120 S. Ct. at

2354. The Supreme Court determined that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 470, 120 S. Ct. at 2362-63. The Supreme Court explained that, with the exception of a prior conviction, "'[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'" *Id.* at 490, 120 S. Ct. at 2363 (quoting *Jones v. United States*, 526 U.S. 227, 252-53, 119 S. Ct. 1215, 1228-29, 143 L. Ed. 2d 311 (1999) (Stevens, J., concurring)).

Following the reasoning of *Apprendi*, the Supreme Court in *Alleyne* held that an element increasing a mandatory *minimum* sentence must also be submitted to the jury. *Alleyne*, 570 U.S. at 114-15, 133 S. Ct. at 2162 ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury.").

Most recently, in *Haymond*, the Supreme Court considered a mandatory sentencing provision in the federal supervised release statutory scheme, 18 U.S.C. § 3583(k), and determined that it violated the defendant's rights under the Fifth and Sixth Amendments. *See Haymond*, 588 U.S. at ___, 139 S. Ct. at 2373 (plurality opinion). Section 3583(k) required a judge considering the revocation of a defendant's supervised

15

release to "impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction" if the judge found by a preponderance of the evidence that a defendant, while on supervised release, committed one of several enumerated offenses. *Haymond*, 588 U.S. at ___, 139 S. Ct. at 2374 (plurality opinion). Upon revocation, the defendant in *Haymond* "faced a minimum of five years in prison instead of as little as none." *Id*. at ___, 139 S. Ct. at 2378.

When considering the constitutionality of § 3583(k), the *Haymond* plurality "emphasized the 'structural difference' between traditional parole, which operated as a form of conditional liberty, and supervised release, which was introduced 'only to encourage rehabilitation *after* the completion of [a defendant's] prison term.'" *United States v. Coston*, 964 F.3d 289, 295 (4th Cir. 2020) (alteration in original) (quoting *Haymond*, 588 U.S. at ___, 139 S. Ct. at 2382 (plurality opinion)). The *Haymond* plurality determined that the difference between parole and supervised release "'bears constitutional consequences'—namely, the inability to circumvent the historically significant jury right." *Id.* (quoting *Haymond*, 588 U.S. at ___, 139 S. Ct. at 2382 (plurality opinion)) (discussing plurality opinion). In explaining the *Haymond* decision, the Fourth Circuit Court of Appeals concisely explained that *"*[t]o the [*Haymond*] plurality, this is also an obvious outgrowth of the *Apprendi* line of cases, which has held that any element that necessarily increases the minimum or maximum prison sentence must be proven to a jury beyond a

reasonable doubt." *Id.* (citing *Apprendi*, 530 U.S. 466, 120 S. Ct. 2348, and *Alleyne*, 570 U.S. 99, 133 S. Ct. 2151). Still, as this Court has recognized, the plurality also noted that its decision was "limited to § 3583(k)—an unusual provision enacted little more than a decade ago—and the *Alleyne* problem raised by its 5-year mandatory minimum term of imprisonment." *Haymond*, 588 U.S. at ___, 139 S. Ct. at 2383 (plurality opinion). *Accord State v. Edward B.*, No. 19-1026, 2020 WL 7231608, at *4 (W. Va. Dec. 7, 2020) (memorandum decision) (quoting same).

Despite the plurality's consideration of *Apprendi* and *Alleyne*, the controlling decision in the *Haymond* case is Justice Breyer's concurrence. Justice Breyer's concurrence "presented the narrowest grounds for the Court's holding and therefore controls." *Coston*, 964 F.3d at 295 (citing cases including *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 993, 51 L.Ed.2d 260 (1977), to explain the relationship between Justice Breyer's concurrence and the plurality opinion).[13] Justice Breyer's concurrence "departed from the plurality in two key ways: it found that supervised release is not so different from traditional parole, and that *Apprendi* and *Alleyne* do not apply in the supervised release context." *Id.* (citing *Haymond*, 588 U.S. at ___, 139 S. Ct. at 2385

---

[13] "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 993, 51 L. Ed. 2d 260 (1977) (omission in original) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 2923 n.15, 49 L. Ed. 2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).

17

(Breyer, J., concurring)). Instead, Justice Breyer explained that "[r]evocation of supervised release is typically understood as 'part of the penalty for the initial offense.'" *Haymond*, 588 U.S. at ___, 139 S. Ct. at 2386 (Breyer, J., concurring) (quoting *Johnson v. United States*, 529 U.S. 694, 700, 120 S. Ct. 1795, 1800, 146 L. Ed. 2d 727 (2000)). Justice Breyer, however, concurred in the judgment that § 3583(k) was unconstitutional and noted that that § 3583(k) appeared "more like punishment for a new offense, to which the jury right would typically attach" rather than a sanction for a "breach of trust." *Haymond*, 558 U.S. at ___, 139 S. Ct. at 2386 (Breyer, J., concurring) (setting forth three reasons why § 3583(k) seemed "more like a punishment for a new offense").

Mr. White argues on appeal that he had already served the maximum sentence for the underlying conviction and, pursuant to *Apprendi*, *Alleyne*, and *Haymond*, cannot be sentenced to additional imprisonment without a jury trial. However, none of the cases cited by Mr. White stand for the proposition that the sentence of a term of imprisonment, which resulted from the revocation of his supervised release pursuant to West Virginia Code § 62-12-26, was unconstitutional. The mandatory minimum term of imprisonment in 18 U.S.C. § 3583(k), based upon judge-found facts, resulted in the United State Supreme Court's finding of unconstitutionality in *United States v. Haymond*, 588 U.S. ___, 139 S. Ct. 2369. Unlike 18 U.S.C. § 3583(k), West Virginia's supervised release revocation statute has no mandatory minimum term of imprisonment, based upon a factual

18

finding made by a judge, that increases a defendant's period of incarceration. *See* W. Va. Code § 62-12-26.

While Mr. White's argument ignores the narrowing effect of Justice Breyer's concurring opinion on the plurality's opinion in *Haymond*, even the plurality opinion fails to deliver the result that Mr. White seeks. We have recognized multiple times that the *Haymond* plurality limited its finding of unconstitutionality to 18 U.S.C. § 3583(k) and its mandatory minimum term of imprisonment, rather than broadening its finding to the entire federal supervised release scheme. *See State v. Black*, No. 20-0244, 2021 WL 3833716, at *3-4 (W. Va. Aug. 27, 2021) (memorandum decision); *State v. Raymond B.*, No. 20-0605, 2021 WL 2580715, at *2 (W. Va. Jun. 23, 2021) (memorandum decision);[14] *Edward B.*, 2020 WL 7231608, at *4. Consistent with our determination in *Black*, we find that Mr. White's "reliance on *Haymond* for the proposition that he is entitled to a jury trial on his supervised release revocation" is "misplaced." *See Black*, 2021 WL 3833716, at *4. We do

---

[14] To the extent that Mr. White argues that our memorandum decision in *Raymond B.* is actually a *probation* revocation case and should be afforded no consideration, he is incorrect. *See generally State v. Raymond B.*, No. 20-0605, 2021 WL 2580715 (W. Va. June 23, 2021) (memorandum decision). However, this confusion is understandable, as the memorandum decision inaccurately refers to revocation of probation when it instead contemplates a revocation of supervised release under West Virginia Code § 62-12-26. Certainly, § 62-12-26(h)(3) provides that the Rules of Criminal Procedure applicable to a court revoking probation also apply to a court finding a violation of a condition of supervised release. *See* W. Va. Code § 62-12-26(h)(3). *See also* W. Va. R. Crim. P. 32.1 (titled "Revocation or modification of probation"). However, probation and supervised release are distinct. *Compare* W. Va. Code § 62-12-2 (regarding eligibility for probation), *and* § 62-12-3 (regarding suspension of sentence and release on probation), *with* W. Va. Code § 62-12-26 (regarding extended supervised release for sex offenders).

19

not extend the *Haymond* Court's finding that 18 U.S.C. § 3583(k) is unconstitutional to West Virginia Code § 62-12-26, as § 62-12-26 does not provide that the court must sentence the defendant to a mandatory minimum term of imprisonment. For these reasons, we hold that *United States v. Haymond*, 588 U.S. ___, 139 S. Ct. 2369, 204 L. Ed. 2d 897 (2019), does not apply to a supervised release revocation pursuant to West Virginia Code § 62-12-26 because § 62-12-26 does not require a mandatory minimum sentence upon revocation.

We also reject Mr. White's contention that *Apprendi* and its progeny prohibit aggregate sentences for his original and revocation sentences that exceed the maximum sentence of his underlying conviction. *See United States v. Oxenham*, No. 22-4048, 2022 WL 7973429, at *2 (4th Cir. Oct. 14, 2022) (per curiam) ("Indeed, [defendant's] argument that *Apprendi* prohibits aggregate original and revocation sentences that exceed the statutory maximum for the underlying crime of conviction has been rejected by multiple [federal] circuits that have considered the issue post-*Haymond*.").[15] In West Virginia, a revocation of supervised release is "simply . . . a continuation of the legal consequences of

---

[15] The *Oxenham* court cited *United States v. Moore*, 22 F.4th 1258, 1265-69 (11th Cir. 2022); *United States v. Childs*, 17 F.4th 790, 791-92 (8th Cir. 2021); *United States v. Henderson*, 998 F.3d 1071, 1078 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 810, 211 L. Ed. 2d 503 (2022); and *United States v. Salazar*, 987 F.3d 1248, 1261 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 321, 211 L. Ed. 2d 157 (2021), in support of its holding rejecting the defendant's aggregate sentences argument. *See United States v. Oxenham*, No. 22-4048, 2022 WL 7973429, at *2 (4th Cir. Oct. 14, 2022) (per curiam).

a defendant's original crime." *State v. Hargus*, 232 W. Va. 735, 743, 753 S.E.2d 893, 901 (2013). The revocation sanction is "part of a single sentencing scheme arising from the defendant's original conviction." [16] *Id. See also* Syl. pt. 11, in part, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011) (describing supervised release as a "legislatively mandated additional punishment" that is "an inherent part of the sentencing scheme for certain offenses").

We therefore determine that the circuit court did not err by denying Mr. White's motion to dismiss the petition or by sentencing Mr. White to a term of imprisonment without holding a jury trial when revoking his supervised release.

### B. Mr. White's Substantive Violation of a Term of Supervised Release

Mr. White also contends that the circuit court erred by finding, by clear and convincing evidence, that he conspired to deliver crack cocaine, in violation of conditions of his supervised release.[17] *See* W. Va. Code § 62-12-26(h)(3) (requiring that a court find

---

[16] We also recognize that Mr. White's argument, if successful, would effectively eviscerate the supervised release scheme in West Virginia, often resulting in a circuit court having to hold a jury trial for a violation of a condition of supervised release. We agree with Justice Breyer's contention that, "in light of the potentially destabilizing consequences, I would not transplant the *Apprendi* line of cases to the supervised-release context." *United States v. Haymond*, 588 U.S. \_\_\_, \_\_\_, 139 S. Ct. 2369, 2385, 204 L. Ed. 2d 897 (2019) (Breyer, J., concurring).

[17] Mr. White admitted to violating at least one of his conditions of supervised release—using crack cocaine. However, because the circuit court based its sentence on

"by clear and convincing evidence that the defendant violated a condition of supervised release" before revoking his supervised release). We reject Mr. White's argument and find that the circuit court did not clearly err in finding that Mr. White violated this condition of supervised release and by revoking his term of supervised release.

"In order for the State to prove a conspiracy under *W. Va. Code*, 61-10-31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. pt. 4, *State v. Less*, 170 W. Va. 259, 294 S.E.2d 62 (1981). The same requirement applies in the context of a supervised release revocation hearing when the defendant is accused of violating his supervised release terms and conditions by participating in a criminal conspiracy. *See* W. Va. Code § 62-12-26(h)(3). The agreement need not be formal, and "may be inferred from the words and actions of the conspirators, or other circumstantial evidence." *Less*, 170 W. Va. at 265, 294 S.E.2d at 67. The overt act may be committed by anyone in the conspiracy, and each coconspirator does not have to commit an overt act. *Id.*

Here, ample evidence supported the circuit court's finding that clear and convincing evidence showed that Mr. White conspired to deliver crack cocaine in violation

---

"violations of supervised release"—both the violation of use and the violation of conspiracy to deliver a controlled substance—we will review Mr. White's substantive argument.

of a term of his supervised release. In addition to the evidence in Mr. White's vehicle of the personal use of crack cocaine (remnants of the copper scrub pads used to pack crack pipes), his vehicle contained a bag with a removed corner, which Sgt. Harper testified was evidence of "packaging crack cocaine to sell." Sgt. Harper also testified that with Mr. White, in his vehicle, was Mr. Garner, who possessed dealer amounts of crack cocaine and cash on his person. While Mr. White and Mr. Garner drove around together with the large amounts of crack cocaine, Mr. White's wife remained at Mr. Garner's residence with Ms. Allen, where crack cocaine was being prepared in plain view, and where officers recovered many other controlled substances and firearms. Mr. White admitted that he intended to return to that residence, purportedly to drop off Mr. Garner.

While Mr. White argues that nothing proves that Mr. White and his wife were not just buying drugs from Mr. Garner, a conspiracy to deliver crack cocaine can be inferred from the evidence. The circuit court, in making its findings, specifically observed that Sgt. Harper testified regarding the quantity of drugs and cash on Mr. Garner, who was with Mr. White, and that Mr. White's wife was back at Mr. Garner's residence where drugs were being processed. We give deference to the factual findings of the circuit court when the findings are based on the credibility of witnesses. *See* Syl. pt. 3, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994) (noting that, in the context of suppression hearings, "factual findings based, at least in part, on determinations of witness credibility are accorded great deference"). We find that the court did not err as there was sufficient

23

evidence on the record to support the court's conclusion that Mr. White was engaged in a conspiracy to deliver crack cocaine. *See State v. Moore*, No. 18-0786, 2020 WL 533113, at \*5 (W. Va. Feb. 3, 2020) (memorandum decision) (finding sufficient evidence of a conspiracy at a trial when defendant had packaged marijuana in his vehicle, a large amount of cash, and a firearm).

## IV.

## CONCLUSION

For the reasons stated above, this Court affirms the February 16, 2022 order finding that Mr. White violated the conditions of his supervised release and sentencing him to a two-year term of imprisonment.

Affirmed.